**Benjamin H. WOOD, Jr., Appellant,**

v.

**VIRGINIA HAULING COMPANY et al., Appellees.**

No. 75–1408.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1975.

Decided Dec. 19, 1975.

424

plus all taxable costs." Ten days later Mr. O'Brion, counsel for the defendant, responded, enclosing a settlement draft in the amount of $30,000 payable to the plaintiff Wood and his attorney, a release and settlement agreement, a dismissal order, and the firm check of Mr. O'Brion's law firm for "court costs." The check for court costs was in the amount of $97.44 and represented costs incident to the filing of the complaint and the service of subpoenas.

The settlement agreement sent to Mr. Steingold by Mr. O'Brion was a general release and contained no mention of costs. Without authority from Mr. O'Brion, Mr. Steingold typed into the settlement agreement an exception to the general release reading as follows: "with the exception of allowable costs to be assessed by the court." Steingold and Wood then cashed the $30,000 check and returned the modified release and settlement agreement to Mr. O'Brion.

Israel Steingold, Richmond, Va. (Jeffrey M. Steingold, Richmond, Va., on brief), for appellant.

John H. O'Brion, Jr., Richmond, Va. (J. W. Morris, III, Richmond, Va., on brief), for appellee.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

This case is presented to us in the guise of whether the district Clerk erred in the taxation of costs and whether the district judge abused his discretion in declining to review the bill as taxed by the Clerk. We view the matter differently. It seems to us to present a not so simple problem of court administration: whether the parties agreed upon a settlement; if so, the proper implementation of it; if not, supervised rescission of partial execution.

The case began as one in tort with jurisdiction based upon diversity of citizenship. After negotiation between counsel, Mr. Steingold, attorney for the plaintiff, wrote to confirm "our compromise settlement . . . for $30,000

Subsequently Mr. Steingold asked that Mr. O'Brion and his client pay certain expenses incurred by the plaintiff with regard to the obtaining of depositions at various places far removed from the jurisdiction, in the total amount of $2,628.09. When the amount was not paid, Mr. Steingold sought to have that amount taxed by the Clerk as costs to be imposed upon the defendants in the case. The Clerk declined to do so on the ground that the case had been settled and that the practice of the Richmond division of the district court was not to tax costs in settled cases "as the attorneys are to agree to costs in the settlement." Thereafter the district judge declined to require the Clerk to tax the costs on the ground that the question of whether Mr. O'Brion and his clients should pay the sum of $2,628.09 depended upon whether the sum was agreed upon in the settlement agreement, and would not depend upon whether it was designated "costs" or even taxed as "costs." Dissatisfied with the judge's view of the matter, Mr. Steingold continued to insist that the question of what is a taxable cost item should be resolved by

the Clerk. Finally Mr. O'Brion agreed (by letter of January 10, 1975) to the Clerk taxing costs as of November 8, 1974. The Clerk proceeded to do so, taxing costs in the amount of $76.64, and refusing to include the expenses of taking depositions amounting to some $2,550.

The district judge declined to review the taxation of costs, correctly perceiving that the dispute was not over costs as such but whether the purported settlement agreement contemplated payment of a relatively small sum or a vastly larger one as "costs."

We vacate the taxation of costs in the amount of $76.64, and remand to the district court with instructions.

■ A United States district court has inherent power to supervise and aid the implementation of settlement agreements in pending litigation. There is here a fact dispute which can only be resolved by an evidentiary hearing. If there was ever a settlement agreement, it cannot be discerned from Mr. Steingold's letter and Mr. O'Brion's response. Tendering a check to Mr. Steingold in the amount of $97.44 for "court costs" is certainly not an agreement to pay "all taxable costs" if the latter phrase is interpreted to mean some $2,500 more, as Mr. Steingold would construe it. Nor can Mr. Steingold change the agreement by inserting into the release a phrase not authorized by Mr. O'Brion.

On remand, the district judge should determine whether or not there was a meeting of the minds between the parties and their counsel as to what amount of money, in addition to the $30,000, would be paid by Mr. O'Brion's client. This inquiry may require a determination of whether counsel, in the course of their negotiations, spoke of "court costs" or of "taxable costs," or used other words having a precise meaning and indicating with particularity what items of "costs" were to be included.

■ The task of the district court upon remand is to find, if he can, the terms of the *complete* settlement agreement, or determine that there was none. A settlement agreement by definition should end litigation. Court clerks and federal judges cannot monitor the disintegration of a cause of action by bits and pieces. Accordingly, if the district judge should determine after an evidentiary hearing that there was an agreed upon settlement that can be translated into terms of dollars and cents, he should enforce payment of precisely that amount. It is settled that he has the power and authority to do so. *Kukla v. Nat'l Distillers Products Co.,* 483 F.2d 619 (6th Cir. 1973); *Massachusetts Casualty Insurance Co. v. Forman,* 469 F.2d 259 (5th Cir. 1972). If he should determine that there was no meeting of the minds, that there was never complete agreement on the terms of the settlement, then the $30,000 received by Mr. Steingold and his client must be returned to Virginia Hauling Company. In the latter event, the case would, of course, be restored to the calendar and come to trial with the parties placed in precisely the same position vis-a-vis one another monetarily as they occupied before the alleged "settlement" of this case. *Hester v. New Amsterdam Casualty Co.,* 268 F.Supp. 623 (D.S.C.1967). To assure compliance with whatever order may be entered, the district court, in its discretion, may join Mr. Steingold and Mr. O'Brion as parties defendant. It may also require them and their clients to testify under oath with respect to the authority of counsel to agree upon a settlement, for there can be no agreement without express authority. *See generally Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969).

We reject the notion that the case was settled upon payment of the $30,000 and that the dispute over the remaining sum to be paid is a separate matter. We think it is of one piece. It would be wholly impractical to view it otherwise. Because jurisdiction rested upon diversity of citizenship, and because of the $10,000 jurisdictional requirement, it would not even be possible to litigate the remaining portion of the dispute in federal

court. We think it intolerable to put upon the parties and the state courts the burden of finishing the tail end of a federal case. There is no such thing as half settlement or even 95 percent settlement. It is for the district court either to implement a complete settlement agreed upon by the parties or to restore them to the status quo prior to partial execution of an aborted contract. There can be no in-between. It is settlement *vol non.*

*Vacated and remanded.*