**Mehmet N. OZYAGCILAR, Appellant,**

v.

**Milton DAVIS and J.D. Waugh, and University of South Carolina, Appellees,**

v.

**Kenneth SWAISLAND, Rafel Industrial Group, Ltd., Bryan E.W. Gransden, Norminco Developments, Ltd., B.J.R. Research Company, and Great Basins Petroleum Company, Third-Party Defendants.**

No. 82–1472.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 14, 1983.

Decided March 1, 1983.

Herbert Rosenberg, New York City (Miller, Singer, Michaelson & Raives, Barry Evans, Curtis, Morris & Safford, P.C., New York City, on brief) for appellant.

Robert Neuner, New York City (John D. Murnane, Brumbaugh, Graves, Donohue & Raymond, New York City, Robert W. Dibble, Jr., Randall T. Bell, Robert E. Stepp,

---

McNair, Glenn, Konduros, Corley, Single-tary, Porter & Dibble; C. Tolbert Goolsby, Jr., Deputy Atty. Gen., Columbia, S.C., on brief) for appellees.

Before WINTER, Chief Judge, WIDEN-ER, Circuit Judge, and FIELD, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Mehmet Ozyagcilar, a student at the University of South Carolina, sued the University and two of its professors regarding patent rights to two new chemical processes which plaintiff claimed to have invented. The parties purportedly reached a settlement just before trial. An outline of their agreement was made part of the record and the case was dismissed with prejudice. Later, during the drafting of the formal settlement agreement, a dispute arose over the meaning of a clause in the outline agreement, and the district court, purporting to act as a "final arbiter," issued an order interpreting the agreement. Concluding that the district court proceeded improperly, we reverse its order and remand for further proceedings consistent with this opinion.

## I.

One of the two chemical processes at issue in the original suit involved the synthesis of ammonia and the other the synthesis of hydrocarbons and alcohols. Ozyagcilar alleged in his complaint that the University and its professors had wrongfully appropriated his inventions and filed patent applications for them. Plaintiff also filed patent applications for both inventions concurrent with his filing suit.

Just before trial, lawyers for the parties reached an agreement in settlement of the litigation. An outline of the agreement was drafted by defendants' attorneys and signed by plaintiff and all of the attorneys for both sides. It was contemplated that the outline would be followed by the drafting and execution of more formal documents. In relevant part, the outline provided for

Ownership in the University of all United States and foreign patents and patent applications except for Turkey.... Mr. Ozyagcilar to receive a nonexclusive transferrable royalty-free irrevocable license under the patents and patent applications.

When the case was called for trial, the outline agreement was read into the record. The district court asked plaintiff's counsel whether he accepted the terms of the agreement and had authority to do so, and counsel responded that he did. The following colloquy then took place:

THE COURT: Do you further agree that on behalf of your client, if any dispute arises under this settlement as to its terms and the meaning of the words ... that that matter will be resolved by the court?

PLAINTIFF'S COUNSEL: We understand that to be the case, yes sir.

Plaintiff, himself, and counsel for all of the defendants also responded affirmatively when questioned whether they agreed that the court would resolve any disputes which might arise as to the interpretation of the agreement. However, the outline agreement contained no provision that the district court would be the interpreter of any of its terms; it was completely silent as to who was to resolve any disputes arising as to its meaning.

A dispute as to the meaning of "a nonexclusive transferrable royalty-free irrevocable license" arose in the course of drafting the formal settlement agreement. Plaintiff contended that his understanding was that he would have the right to sublicense the process to numerous companies. Defendants contended that they had understood—and that plaintiff had understood—that plaintiff would only get one indivisible license that he could transfer to one company.

The district court, after receiving affidavits and briefs from the parties, issued its "Order Interpreting Settlement Agreement." The district court did not conduct an evidentiary hearing; it made no findings of fact; and it did not address the argu-

ment, raised by plaintiff, that there had never been a meeting of the minds between the parties as to the meaning of the phrase. Rather, the court, purporting to act as a "final arbitor [sic]," examined patent law principles and the effect on the parties of possible interpretations, and imposed a third interpretation. Under the district court's interpretation and order, plaintiff would be able to transfer each of two licenses—one for ammonia and the other for hydrocarbons and alcohols—to one company at any given time. As construed by it, the district court ordered the agreement carried out. Ozyagcilar now appeals.

## II.

■ It is well settled that a district court retains inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court. *Millner v. Norfolk & Western Ry. Co.,* 643 F.2d 1005, 1009 (4 Cir.1981); *Wood v. Virginia Hauling Co.,* 528 F.2d 423, 425 (4 Cir.1975); *Kulka v. National Distillers Prods. Co.,* 483 F.2d 619, 621 (6 Cir.1973). However, it is clear that the district court only retains the power to enforce *complete* settlement agreements; it does not have the power to impose, in the role of a final arbiter, a settlement agreement where there was never a meeting of the parties' minds. *Wood, supra,* 528 F.2d at 425. Where there has been no meeting of the minds sufficient to form a complete settlement agreement, any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial. *Id.*

We think it clear that the district court proceeded erroneously in the present case. Although plaintiff alleged that there had never been a meeting of the minds, the district court did not conduct a plenary hearing and make findings as to this issue.* The failure of the district court to address and resolve this issue leaves open the ques-

tion as to whether there ever was a complete settlement agreement to interpret, let alone its proper interpretation. The court's ruling therefore cannot stand.

The action taken by the district court in the present case cannot be justified on the ground that the parties agreed to let the court "legislate" an interpretation as a "final arbiter" of the outline agreement. The proper role of the district court in enforcing settlement agreements was made clear in *Wood.* There, in remanding a similar case to the district judge, we described his role as "to find, if he can the terms of the *complete* settlement agreement, or to determine that there was none." *Id.* (emphasis in original). Thus, it is improper for the district court, by its own motion or by agreement of the parties, to place itself in the role of a "final arbiter" of a settlement agreement. Instead, on remand, the district court should, after a plenary hearing, determine if there was a settlement agreement between the parties and, if so, its terms and conditions.

REVERSED AND REMANDED.

■

---

* Of course the district court did receive affidavits, but this was an impermissible procedure. Whether there had been a meeting of the parties' minds is clearly a question of fact, and it was error for the district court to attempt to

resolve this question based solely on affidavits and briefs. *Wood, supra,* 528 F.2d at 425; *Millner, supra,* 643 F.2d at 1009; *Kulka, supra,* 483 F.2d at 621–22.