643 S.E.2d 692

**PATRICIA GRAND HOTEL, LLC, Respondent,**

v.

**MacGUIRE ENTERPRISES, INC., Appellant.**

No. 4226.

Court of Appeals of South Carolina.

Submitted Feb. 1, 2007.

Decided March 26, 2007.

---

5. We decide this case without oral argument pursuant to Rule 215, SCACR.

John M. Leiter, of Myrtle Beach, for Appellant.

Douglas M. Zayicek, of Myrtle Beach, for Respondent.

BEATTY, J.:

MacGuire Enterprises ("MacGuire"), operator of the restaurant, "Chantilly's," within the Patricia Grand Hotel, appeals from the circuit court's order, "Ending Action & Amending Lease." MacGuire argues that the trial court erred in: (1)

ruling the parties' agreement not to compete in food and beverage services applied only to the restaurant property, not to the entire hotel; and (2) failing to find there was not an agreement as to the sale of food and beverages within the hotel. We affirm.[1]

## FACTS

Patricia Grand Hotel, LLC, ("Patricia Grand"), owns and operates the oceanfront Patricia Grand Hotel (the "hotel") in Myrtle Beach, South Carolina. In September of 1994, the lease to the space housing the restaurant, Chantilly's, and the attached lounge was assigned from Huffman Investments, Inc., to MacGuire.[2] The lease assigned to and signed by MacGuire stated that MacGuire would provide services within the "demised property," which included: a 140–seat restaurant located within the hotel; a kitchen area with equipment; and an attached lounge area.

MacGuire began operating Chantilly's and the lounge area according to the lease agreement. At some point, MacGuire also began operating a pool bar at the hotel's pool during the summer months. The pool bar area was not attached to Chantilly's or the lounge. Patricia Grand believed operation of the pool bar was not part of the lease, and MacGuire believed that the pool bar was included in the lease because its predecessor in interest also operated the pool bar. The parties could not resolve the dispute, and on October 23, 2003, Patricia Grand filed both an eviction action in magistrate court to evict MacGuire from the pool bar and an action for civil damages in circuit court under the theories of trespass, breach of contract, quantum meruit, conversion, and injunction. MacGuire's motion to have the eviction action transferred from the magistrate court to the circuit was granted, and the eviction action and the damages action were consolidated.

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. The lease with Huffman Investments was with the predecessor in interest to Patricia Grand, Patricia Grand, A South Carolina Limited Partnership. Patricia Grand purchased the hotel and became the lessor of the restaurant thereafter.

Prior to the jury trial, the parties informed the circuit court that they had reached a settlement agreement wherein the lease would be amended to reflect that it "includes the pool bar under the demise [sic] premises," that the rent would increase to $3,300, and that MacGuire could increase some prices on golf and meal packages. MacGuire's attorney then informed the circuit court that "[t]here are a number of outstanding issues, your honor, that constitute the atmospherics between the parties and that's what made discussions up to this point difficult," but that the parties had quickly agreed on the main issue. MacGuire's attorney noted that the parties had "agreed to cooperate in good faith on the number of issues that are still remaining," and he pointed out that Patricia Grand was operating an Icee machine near the pool bar. Patricia Grand agreed that the Icee operation would cease. The agreement was put on the record and the court approved it. Further, the court ordered the parties to put the agreement in writing and have it signed by all the parties.

The parties were unable to agree on the wording of the written agreement. Patricia Grand alleged the parties' agreement only dealt with its sale of Icees at the pool bar and MacGuire's sale of food and beverages at the "demised property," including the pool bar, the restaurant, and the lounge. MacGuire believed the agreement not only resolved the pool bar issue but also provided that Patricia Grand agreed not to compete in any food or beverage sales "on site," or at any location on the entire hotel property. At the hearing to determine the terms of the settlement agreement, the circuit court reviewed the portion of the transcript where the parties outlined the settlement agreement and heard arguments from both counsels. The court determined that the parties were only discussing competition in the form of Icee sales at the pool bar, part of the "demised premises." After the hearing, the circuit court signed an order "Ending Action & Amending Lease," which, in addition to amending the lease to demise the pool bar area to MacGuire, provided that Patricia Grand agreed not to sell "any food or beverage on the demised premises and will not sell, or franchise to any entity the right to sell, any frozen drink commonly referred to as an 'Icee.'" The circuit court denied MacGuire's motion to reconsider, and this appeal followed.

## STANDARD OF REVIEW

This appeal revolves around the specific terms of the parties' modified lease agreement, and thus, the matter sounds in contract. Generally, an action to construe a contract is one at law. *See Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 146, 538 S.E.2d 672, 675 (Ct.App.2000) (noting that an action to construe an unambiguous written contract is one at law). In an action at law, tried without a jury, this court is limited merely to the correction of errors of law and the circuit court's factual findings will not be disturbed unless wholly unsupported by the evidence or controlled by an error of law. *Id.*

## LAW/ANALYSIS

### I.  Meeting of the minds

■   MacGuire argues there was no meeting of the minds with respect to the terms of the settlement agreement. Thus, it argues, there was no settlement agreement and the circuit court should have resumed the trial of the case.

■   "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989). MacGuire points to the Fourth Circuit Case of *Ozyagcilar v. Davis*, 701 F.2d 306 (4th Cir.1983), for the proposition that courts do not have the power to impose a settlement agreement where there was not a meeting of the minds between the parties. In *Ozyagcilar*, a student at the University of South Carolina sued the University over patent rights to a new chemical process the student claimed to have invented. Just prior to trial, the parties informed the court that they had reached an agreement, an outline of their agreement was made part of the record, and the case was dismissed with prejudice. The student's attorney informed the court that if a dispute arose as to the terms and meaning of the agreement, the court would resolve the matter. When the parties attempted to draft a formal settlement, the parties disputed the meaning of a clause in the outline. After reviewing briefs and affidavits and

without a hearing, the district court issued an order interpreting the agreement, despite the student's argument that there had not been a meeting of the minds.

The Fourth Circuit reversed and remanded the matter. The court noted that although the district court had the power to enforce complete settlement agreements, "it does not have the power to impose, in the role of arbiter, a settlement agreement where there was never a meeting of the parties' minds." *Ozyagcilar*, 701 F.2d at 308. The court noted that "[w]here there has been no meeting of the minds sufficient to form a complete settlement agreement, any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial." *Id.* The Fourth Circuit found the district court erred by not conducting a hearing to determine *whether* there had been a meeting of the minds as to the settlement agreement, and if so, to determine the terms and conditions of the settlement agreement. *Id.*

This issue is not preserved for appellate review. Although MacGuire moved the court to reconsider its order, his motion requested that the court change the order to include a covenant for Patricia Grand not to compete on the entire hotel property. MacGuire did not argue that since the parties differed in their interpretation of the settlement agreement, then there was no meeting of the minds and the trial of the matter should proceed. Whether or not proceeding to trial would have been the appropriate thing to do, MacGuire did not request it and the circuit court did not rule upon it. Thus, it is not a matter that is appropriate for our review. *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that an issue must be raised to and ruled upon by the trial court in order to be preserved for appellate review). Further, the present case differs from *Ozyagcilar* in that the circuit court actually had a hearing to determine whether a settlement agreement existed and to determine the terms of the agreement.

Nevertheless, because MacGuire did not preserve the issue of whether the circuit court should have rescinded the agreement and proceeded to trial, we decline to address it.

## II. Terms of the settlement agreement

■ MacGuire argues the circuit court erred in finding the parties' agreement only concerned the sale of food and beverages at the pool bar, restaurant, and lounge. MacGuire argues the words used at the hearing were clear and unambiguous that the agreement concerned the hotel "site," and thus the parties agreed that Patrica Grand would not sell food or beverages anywhere on the hotel property. In the alternative, MacGuire argues that should the terms of the agreement be considered ambiguous, then it should be interpreted in MacGuire's favor. We disagree.

As previously stated, the circuit court's role in determining the actual terms of the settlement agreement between the parties is similar to the court's role in interpreting the terms of a contract. In interpreting contracts, the court should ascertain and give legal effect to the parties' intentions. *Gilbert v. Miller,* 356 S.C. 25, 30, 586 S.E.2d 861, 864 (Ct.App. 2003) ("The main guide in contract interpretation is to ascertain and give legal effect to the intentions of the parties as expressed in the language of the lease."). Where the language of the contract is clear and unambiguous, the court must construe the contract according to the terms the parties used as understood in their plain, ordinary, and popular sense. *Schulmeyer v. State Farm Fire & Cas. Co.,* 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003).

Thus, "where an agreement is clear and capable of legal construction, the courts [sic] only function is to interpret its lawful meaning and the intent of the parties as found within the agreement." *Messer v. Messer,* 359 S.C. 614, 628, 598 S.E.2d 310, 317 (Ct.App.2004). "In the enforcement of an agreement, the court does not have the authority to modify terms that are clear and unambiguous on their face." *Id.* at 621, 598 S.E.2d at 314; *Ebert v. Ebert,* 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995). However, where "the language of a settlement agreement is susceptible of more than one interpretation, it is the duty of the court to ascertain the intentions of the parties." *Mattox v. Cassady,* 289 S.C. 57, 60, 344 S.E.2d 620, 622 (Ct.App.1986).

At trial, the parties announced that they had reached a settlement agreement. The following exchange took place:

[MacGuire's attorney]: Now my client is in food sales, obviously, food and beverage. There's the problem that they've been experiencing is competition and its our understanding that the agreement is is [sic] that [Patricia Grand] will not sell any food **on site** and that they will not compete with the Icee sales.

[Court]: What is that?

[MacGuire's attorney]: The Icee; they have a frozen drink ice cream machine right outside of the pool bar window.

[Patricia Grand's attorney]: The Icee operation will cease, your honor.

. . .

[Court]: Now if for some, now just so that the court's clear, what you're talking about is the current operations of both sides as far as what your client operates and does currently the competition might cease but obviously your client is not then seeking to include that in automatically in his operation?

[MacGuire's attorney]: I'm sorry, include—

[Court]: The Icee or whatever it is that you thought was competition. If it's not already being done it's not something to be done in the future without the parties agreeing to it. What your client can do now is what he is doing now—

[MacGuire's attorney]: Right.

[Court]:—not in addition to that. So if some operation is being ceased on one side the other side can't automatically just pick that up and start doing it without agreement of both parties just so that we're clear about that because I don't want us coming back next week or some other time about this, all right.

[MacGuire's attorney]: And let me just say for the record just so that we are clear on that, my client has always engaged in the sale of the Icees.

[Court]: All right, but what I'm saying is what the parties as I understand the parties agreement he can do what he's doing now, not anything new; anything new would be based on further discussions, if necessary.

[MacGuire's attorney]:  Yes, sir. . . .

(emphasis added).

MacGuire points to its attorney's use of the word "on site" in the hearing before the circuit court to support its argument that the agreement was for Patricia Grand not to compete in food and beverage sales on the entire hotel property.   Patricia Grand argues the entire purpose of the hearing was to deal with food and beverage sales at the pool bar, and it is clear from the hearing transcript that the pool bar and Icee sales at the pool bar were the only issues discussed.

We agree with Patricia Grand.   Although MacGuire's attorney informed the circuit court that the parties agreed that Patricia Grand would cease selling food "on site," this statement was made in the context of its complaint that Patricia Grand was selling Icees in direct competition at the pool bar. The parties discussed that the agreement would be that MacGuire would be exclusively selling food and beverages at the pool bar and that the competing sale of Icees by Patricia Grand would cease.   The court clarified that the Icee sales would cease by Patricia Grand and that MacGuire could continue doing what it had done in the past, *i.e.*, sell food and beverages at the pool bar, restaurant, and lounge.   The court went on to say that MacGuire could not "do anything new."

Considering the plain meaning of the words the parties used at the time of the hearing, it appears the parties had a meeting of the minds and that the agreement only related to the lease of the pool bar and the cessation of Icee sales at the pool bar.   No mention was made of complete ban of food or beverage sales from the entire hotel property.

Further, even if one looks to the isolated use of the words "on site" as creating an ambiguity in the agreement, we find no error in the circuit court's interpretation of the agreement. The court reviewed the transcript of the hearing wherein the parties outlined the agreement, and the court ascertained that the parties were only focusing on competing sales at the pool bar and the Icee sales.   We find no error with this interpretation of the agreement based on the parties' expressed intentions at the hearing.  *Mattox*, 289 S.C. at 60, 344 S.E.2d at 622 (noting that the court has a duty to ascertain the intent of the

parties when the language of a settlement agreement is susceptible of more than one interpretation).

Thus, we find no error with the circuit court's interpretation of the agreement to forbid Patricia Grand from selling food and beverages only at the demised locations of the pool bar, restaurant, and lounge.

## CONCLUSION

Based on the foregoing, the order documenting the agreement of the parties is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.