THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Midland Parkway Associates, LLP, Appellant,
 v.
 George Touras,
 Equity Properties and Development Company, Wilmington Trust Company, as
 Trustee for Southland-Summerville W. D. Delaware Business Trust, and
 Principal Mutual Life Insurance Company, Respondents.
 
 
 

Appeal From Dorchester County
 James C. Williams, Jr., Circuit Court
 Judge
Unpublished Opinion No. 2008-UP-083
Submitted December 1, 2007  Filed
 February 6, 2008
AFFIRMED

 
 
 
 William C. Cleveland, of Charleston, for Appellant.
 Michael A. Scardato, Robert L. Widener, both of Charleston; Michael
 Sher, of Chicago, for Respondents.
 
 
 

PER CURIAM:  Midland
 Parkway Associates, LLP (Midland) brought this action against George Touras, Equity Properties and
 Development Company, Wilmington Trust Company, as Trustee for
 Southland-Summerville W. D. Delaware Business Trust, and Principal Mutual Life
 Insurance Company (collectively Wilmington).  Midland sought specific
 performance of an alleged oral agreement to convey real estate between Midland and Wilmington.  The trial court granted summary judgment in favor of Wilmington on Midlands causes of action for breach of contract, fraudulent
 misrepresentation, violation of the South Carolina Unfair Trade Practices Act
 (UTPA), and promissory estoppel.  We affirm.[1]
FACTS
Robert Irick is
 the managing partner of Midland.[2]  In July of 1999, Midland purchased a parcel of land located in Summerville, South Carolina (Midland Parcel).  Following the closing, Midland constructed an
 apartment complex on the Midland Parcel.
During construction,
 Midland discovered a water problem on the Midland Parcel.  According to Midland, water migrated onto the Midland Parcel from an adjacent property leased by
 Winn-Dixie and owned by Wilmington.  The migrating water allegedly caused
 damage to the Midland Parcel including a snake infestation and bubbling of
 the asphalt parking lot.
On September 27, 2001, Irick sent a letter
 to Wilmingtons counsel, Douglas Lubelchek, proposing: (1) Wilmington deed
 Midland .878 acres of property leased by Winn-Dixie; (2) Midland accept the
 drainage and bear any expense of additional drainage construction; (3) Midland ensure
 zoning would not be adversely affected; and (4) Midland indemnify Wilmington for
 any damage.  Midland sent a similar letter to a Winn-Dixie representative, who
 orally agreed to encourage [Wilmington] to cooperate with [Midland].  Irick and Lubelchek engaged in several phone calls, and according
 to Irick, they reached an oral agreement to the conveyance of the property.  Irick
 allegedly asked Lubelchek, to make [it] clear . . . what needs to be done, [to]
 put [it] in writing and . . . [Lubelcheck] said that he would.  Irick believed
 this conversation occurred sometime in February
 of 2002.  The only writing
 evidencing the alleged agreement is a February 19, 2002 letter from Lubelchek
 to Irick stating:   

 [p]ursuant to our conversations regarding the wetland area owned
 by [Wilmington] . . . this letter will confirm the parties understanding
 regarding the conveyance of a portion of the wetland area to Midland. 
 Owner will consider conveying . . . .878 acres . . .
 provided the following conditions are satisfied prior to the conveyance, all at
 Midlands sole cost and expense; if any . . . . 

(emphasis
 added).  In the letter, Wilmington enumerated conditions precedent to any
 conveyance including: (1) Wilmington
 obtains all necessary consents from its lender; (2) Wilmington obtains
 necessary waivers from Winn-Dixie; (3) Midland prepares and submits all plans
 and plats; (4) Midland prepares an easement; (5) Midland obtains all permits or
 approvals; (6) Midland cooperates with regard to any zoning changes; (7)
 Midland bears all costs, including attorney fees; and (8) Midland obtains
 approval from the City of Summerville regarding zoning.
Irick believed this letter constituted a binding and enforceable
 agreement between Midland and Wilmington requiring Wilmington to convey the
 wetland and border parcels if the conditions precedent were met. 
Following the Irick/Lubelchek telephone conversation, but prior to
 the February 19 letter, Irick informed his attorney, Lewis Horton, that Midland and Wilmington had resolved the drainage problem.  After Horton reviewed the
 February 19 letter, however, he told Irick the letter did not indicate an
 unequivocal commitment to convey and the letter did not dovetail, so to
 speak with Iricks description of the agreement.  
Thereafter, Horton sent Lubelchek a letter requesting confirmation
 of the oral agreement.  In Hortons August 28, 2002 letter, he requested Lubelchek
 advise immediately of its intention and to proceed to address the conditions
 precedent required to be performed by Wilmington.  Horton recalled one
 follow-up telephone conversation with Lubelchek, but received no responsive correspondence.
Subsequently, Horton communicated with Jennifer Desser, Lubelchecks
 associate.  By e-mail dated October 9, 2002, Dresser informed Lubelchek of her
 continuing conversations with Irick and described the February 19 letter as
 setting forth conditions to [Wilmingtons] willingness to convey the
 property.  
By later dated November 8, 2002, Horton requested a response from Wilmington within ten days.  The record does not reflect a response.  In a later e-mail to
 Lubelchek, Horton made no mention of Midlands desire to obtain the wetland and
 border parcels, but requested a letter [from Wilmington] committing to handle
 the surface water nuisance problem currently existing on [its] property.[3]
After receiving no response from Wilmingtons counsel on either
 the proposed conveyance or the drainage problem, Horton e-mailed Lubelchek and
 requested an immediate response, asking whether Wilmington would:  

 1. Convey the property in satisfaction of any and all claims as
 originally discussed.
 2. Convey the property for consideration including satisfaction of
 any and all claims.
 3. Give a commitment to handle the surface water drainage problem
 on [Wilmingtons] property so as to allow [Midland] to build a maximum of 48
 additional units on their own property.
 4. Ignore the problem . . . .

Once again Wilmington did not respond and Midland filed this action alleging, inter alia,
 breach of contract, fraudulent misrepresentation, violation of the UTPA, and
 promissory estoppel.  The trial court granted Wilmington summary judgment on
 all causes of action.  This appeal followed.  
STANDARD OF REVIEW
When reviewing the
 grant of a summary judgment motion, appellate courts apply the same standard governing
 the trial court under Rule 56(c), SCRCP.  Walsh v. Woods, 371 S.C. 319,
 324, 638 S.E2d 85, 88 (Ct. App. 2006).  Summary judgment is proper when there
 is no genuine issue as to any material fact and the moving party is entitled to
 judgment as a matter of law.  Rule 56(c), SCRCP.  On appeal from an order
 granting summary judgment, the appellate court will review all ambiguities,
 conclusions, and inferences arising in and from the evidence in a light most
 favorable to the non-moving party below.  Willis v. Wu, 362 S.C. 146,
 151, 607 S.E.2d 63, 65 (2004).
LAW/ANALYSIS

I.  Existence of Valid
 and Enforceable Agreement
Midland contends
 the trial court erred in finding as a matter of law that no valid, enforceable contract
 existed.  We disagree.  
The essential
 terms of a contract are offer, acceptance of the offer, and valuable consideration.  Sauner v. Pub. Serv. Auth. of South Carolina, 354 S.C. 397, 406, 581
 S.E.2d 161, 166 (2003).  In order to have a valid and enforceable contract,
 there must be a meeting of the minds between the parties with regard to all
 essential and material terms of the agreement.  Patricia Grand Hotel v.
 MacGuire Enters., 372 S.C. 634, 638, 643 S.E.2d 692, 694 (Ct. App. 2007).  The
 meeting of the minds requirement cannot be met by the secret purpose or
 intention on the part of one of the parties, stored away in his mind and not
 brought to the attention of the other party, but must be based on purpose and
 intention which has been made known or which, from all the circumstances,
 should be known.  Player v. Chandler, 299 S.C. 101, 105, 382 S.E.2d 891,
 894 (1989).    
The record before
 us evinces no meeting of the minds between Midland and Wilmington.  There is no
 indication essential terms were discussed. Instead, there is only Iricks belief
 that a verbal understanding was reached and a letter from Wilmingtons counsel
 stating Wilmington would consider conveying the wetland parcel provided
 certain conditions were satisfied.  Furthermore, Midlands own attorney
 counseled Irick that the February 19 letter was not an unequivocal commitment
 to convey.  We agree the February 19 letter does not contain the essential
 terms of a contract and find no error in the trial courts legal finding that
 no contract existed.
II.  Statute of Frauds
Midland Parkway argues
 the trial court erred in finding the statute of frauds barred the enforcement
 of any oral agreement.  We disagree.  
A.  Sufficiency of Writings
Midland
 Parkway argues sufficient writings
 memorializing the alleged agreement exist.  We disagree.
Pursuant
 to the South Carolina Statute of Frauds, any contract for an interest in land
 must be in writing and signed by the party against whom enforcement is sought. S.C.
 Code Ann. § 32-3-10(4) (2007).  A writing sufficient to remove an oral
 agreement from the Statute of Frauds must reasonably identify the subject matter
 of the contract, sufficiently indicate a contract has been made between the
 parties, and state with reasonable certainty the essential terms of the
 agreement.  Smith v. McClam, 289 S.C. 452, 456, 346 S.E.2d 720, 723
 (1986).  
In this case, no
 sufficient writing exists to satisfy the Statute of Frauds.  Midland contends
 the February 19 Letter from Lubelchek and the October 9, 2002 e-mail
 from Dresser together satisfy the writing requirement.  However, neither the
 letter nor the e-mail sufficiently describes the elements essential for a
 contract for the conveyance of land.  As previously discussed, the February 19
 letter does not contain the essential terms of an agreement.  The e-mail merely
 explains Iricks continued interest in the property and describes the status of
 the February 19 requirements.  These writings, individually or read together,
 fail to satisfy the writing requirement of the Statute of Frauds.   Accordingly,
 we find the trial judge did not err in granting summary judgment.
B.  Part Performance Exception
 to the Statute of Frauds 
Midland argues its part performance of the contract is
 sufficient to avoid the Statute of Frauds.  We find this issue not preserved
 for our review.  An issue cannot be raised for the first time on appeal but must
 have been raised to and ruled upon by the trial court.  Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000).  In this case, the trial
 court did not rule on the part performance exception to the Statute of Frauds. 
 Accordingly, this issue is not preserved for our review. 
III.  Promissory
 Estoppel
Next, Midland argues the court erred in not finding Wilmington estopped from denying the contract.  We disagree.  
The elements of
 promissory estoppel are: (1) the presence of a promise unambiguous in its
 terms; (2) reasonable reliance upon the promise by the party to whom the
 promise is made; (3) the reliance is expected and foreseeable by the party who
 makes the promise; and (4) the party to whom the promise is made must sustain
 injury in reliance on the promise.  Rushing v. McKinney, 370 S.C. 280,
 295, 633 S.E.2d 917, 925 (Ct. App. 2006) (emphasis omitted).
Midland failed to
 show the existence of an unambiguous promise.  As discussed above, no evidence
 in the record indicates a meeting of the minds as to the alleged agreement.  The
 letter indicating Wilmington would consider conveying the wetland parcel is
 ambiguous, as explained to Irick by Midlands counsel.  We find no error by the
 trial court in denying Midland recovery on its claim
 of promissory estoppel.
IV.  Fraudulent
 Misrepresentation 
Midland argues the
 trial court erred in finding insufficient evidence to maintain a claim for
 fraudulent misrepresentation.  We disagree.
The elements of
 an action for fraud based on a representation include:  1) a representation; 2)
 falsity; 3) its materiality; (4)
 knowledge of the falsity or a reckless disregard of its truth or falsity; (5)
 intent that the representation be acted upon; (6) the hearers ignorance of its falsity; (7) the hearers
 reliance upon its truth; (8) the hearers right to rely thereon; and (9) the
 hearers consequent and proximate injury.  Redwend Ltd. Partnership v.
 Edwards, 354 S.C. 459, 473, 581 S.E.2d 496, 503-04 (Ct. App. 2003).  All
 elements in an action for fraudulent misrepresentation must be met.  See OShields v. Southern Fountain Mobile Homes, Inc., 262 S.C. 276, 281,
 204 S.E.2d 50, 52 (1974) (finding lack of any one of the elements of fraudulent
 misrepresentation fatal to recovery).  
In this case, even
 if we assume all other elements are met, Midland fails to establish the element
 of the right to rely on the alleged misrepresentation.  Whether reliance is
 justified requires the court to review the attendant circumstances.  Elders
 v. Parker, 286 S.C. 228, 233, 332 S.E.2d 563, 567 (Ct. App. 1985).  The
 general rule is that questions concerning reliance and its reasonableness are
 for the jury.  Unlimited Servs., Inc. v. Macklen Enters., 303 S.C. 384, 387,
 401 S.E.2d 153, 155 (1991).  However, the trial court may rule on the reasonableness
 of the reliance as a matter of law where the party asserting the
 misrepresentation fails to provide evidence of a factual dispute on the issue.  See Moorhead v. First Piedmont Bank & Trust Co., 273
 S.C. 356, 360, 256 S.E.2d 414, 416 (1979) (finding no jury issue on question of
 reasonableness of reliance).
We find the trial
 court did not err in finding Midlands did not reasonably rely on a
 misrepresentation by Wilmington.  Even assuming Irick could reasonably rely on
 an oral representation by Libelcheck in a telephone conversation, the February
 19 Letter and Midlands counsels advice rendered any further
 reliance on the alleged agreement unreasonable as a matter of law.  

 V.  South Carolina Unfair Trade
 Practices Act
Finally, Midland contends it is entitled to proceed on its claim under the UTPA.   We find Midland abandoned this issue.
An issue is deemed
 abandoned and will not be considered on appeal if the argument is raised in a
 brief but not supported by authority.  Glasscock, Inc. v. United States Fid. & Guar. Co., 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001).  In
 the present case, Midland failed to cite any authority in support of its
 argument that it was entitled to proceed on its UTPA claim.  Accordingly, this
 court need not consider this issue on appeal.
CONCLUSION
For the foregoing
 reasons, we find the trial judge properly granted summary judgment on all of Midlands causes of action.  Accordingly, the trial judges order is
AFFIRMED. 
ANDERSON, SHORT, and WILLIAMS, JJ., concur.

[1]  We
 decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  His brother, Lawton Irick, is the only other
 partner.  
[3]  Midland intended to build additional units on
 its existing property and the number of units it could construct depended on
 whether Wilmington would handle the drainage problem on its own property or
 whether Midland would be required to construct a retention pond, thereby
 decreasing the amount of land available for construction.