**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ROBERT C. HENSLEY,
            *Plaintiff-Appellant,*

v.

ALCON LABORATORIES, INC., a foreign
corporation,
            *Defendant-Appellee,*

and

ALAN MODLISZEWSKI, an individual,
            *Defendant.*

No. 01-1442

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(CA-99-458-3)

Argued: December 4, 2001

Decided: January 22, 2002

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler joined. Judge Motz wrote an opinion concurring in the judgment.

---

## COUNSEL

**ARGUED:** William D. Ryan, Hurricane, West Virginia, for Appellant. Charles MacKinley Surber, Jr., JACKSON & KELLY, P.L.L.C.,

Charleston, West Virginia, for Appellee. **ON BRIEF:** Sherri D. Goodman, GOODMAN ADVOCACY, Charleston, West Virginia, for Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

On the motion of Alcon Laboratories, Inc. to enforce a settlement agreement allegedly reached with Robert Hensley in connection with his wrongful-employment-termination suit against Alcon, the district court directed the parties to consummate the settlement agreement by a specified date on the threat of dismissing the wrongful-termination suit with prejudice. When Hensley refused to sign the settlement agreement presented to him, protesting that he had not agreed to the terms included in it, the court dismissed the case with prejudice and assessed Alcon's attorneys fees against Hensley because he "unreasonably refused to sign the agreement."

Because the district court failed to conduct a plenary hearing on whether a binding settlement agreement had been reached and, if so, to determine its terms and conditions, we remand for further proceedings. We also reverse the judgment of dismissal and award of attorneys fees as inappropriate sanctions for Hensley's failure to sign the agreement.

I

Beginning in 1981, Robert Hensley worked as an electronic technician for Alcon Laboratories, Inc. Because of chronic depression, Hensley took a medical leave of absence in December 1996, which he expected would last until January 1997. Thereafter, however, Hensley asked for and was granted eight separate medical leave extensions, lasting until June 1997. At that time, he requested a leave of absence for an indefinite term. Under existing company policy, Alcon subsequently gave Hensley's job to another employee. In May 1998, when Hensley was medically released to return to full-time work, he sought to return to Alcon. At that time, however, Alcon was unable to find

a comparable job for which Hensley was qualified. A production technician position was available, but the pay grade was lower than Hensley's previous electronic technician position, and Hensley declined to take the job. Alcon thereupon terminated Hensley's employment on May 26, 1998.

Hensley commenced this action in West Virginia state court alleging, in three counts, "wrongful termination/breach of employment agreement," "discrimination due to disability and age" under the West Virginia Human Rights Act, and "punitive damages." Relying on diversity jurisdiction under 28 U.S.C. § 1332, Alcon removed the action to federal court and answered the complaint.

At a settlement conference held with the district judge on May 17, 2000, and attended by Hensley, Hensley's attorney, Jeffrey Taylor, and Alcon's attorney, Alcon and Hensley apparently agreed on a $9,000 amount for settlement of Hensley's wrongful termination suit. The district court issued an order stating that it had been "advised by counsel of the pending settlement of this action" and removed the case from the active docket, giving the parties 30 days within which to submit an agreed-upon order of dismissal. The district court's order also stated that if no agreed-upon order of dismissal were submitted, the court would dismiss the case without prejudice, subject to reinstatement for "good cause."

Following the May 17 conference, Alcon's attorney sent Taylor a proposed written settlement agreement which provided for the payment to Hensley of $9,000 in return for a full release of all claims. The proposed agreement also included several terms and conditions. First, it included a "standard reference clause" under which Alcon agreed to provide Hensley with a reference that he was a "Good Solid Performer." Second, the agreement included a "reinstatement clause," under which Hensley agreed not to seek reemployment by Alcon. Third, it included a "denial of liability clause," under which Alcon denied any liability to Hensley. Fourth, it included a "confidentiality clause." And finally, it included an "approval clause" — in compliance with the West Virginia Human Rights Commission's ruling concerning declaratory releases — that provided Hensley with a 21-day period during which he could accept or reject the settlement agree-

ment and a 7-day period during which he could revoke the agreement once it had been executed.

Taylor suggested some changes to the proposed agreement, including deletion of the 7-day revocation clause. Alcon returned a revised agreement which deleted not only the 7-day revocation clause but also the 21-day approval clause. The proposed agreement retained all of the other terms originally proposed.

When Taylor did not return a signed agreement to Alcon, Alcon inquired about the status of the settlement. On July 7, 2000, Taylor told Alcon that Hensley had some concerns with the settlement agreement and would not sign it.

After Alcon failed to make progress on obtaining a signed settlement agreement, it filed a motion to enforce the settlement agreement or, in the alternative, for summary judgment on the merits of the underlying case. It also requested attorneys fees and costs. In response, Taylor filed a motion to withdraw from his representation of Hensley because Taylor "had made numerous attempts to draft a release that would be acceptable to Hensley, but [was] unable to do so." The motion to withdraw stated that Hensley told Taylor that he had been "forced into settlement," that he "did not intend to sign a release," and that "he wanted to go to trial."

In affidavits thereafter exchanged by the parties, significant disagreement emerged over what happened during the May 17 settlement conference, which was not on the record. Alcon contended that it had "reached an agreement to settle the case whereby Alcon would pay the total sum of $9,000 in complete Release of all plaintiff's claims." In his motion to withdraw as counsel for Hensley, Taylor stated that at the settlement conference "Hensley agreed to dismiss his claims against Alcon in exchange for payment by Alcon in the amount of nine thousand dollars ($9,000)." Hensley, on the other hand, stated that there were merely "representations made by [his] counsel at a settlement conference that [Alcon] would pay $9,000 for a release of all claims." And no one who attended the May 17 conference reported a discussion of the various other clauses included in the proposed settlement agreement.

By order dated August 30, 2000, the district court granted Alcon's motion to enforce the settlement agreement. It concluded:

> On May 17, 2000, this Court and the parties engaged in a final settlement conference in which the parties diligently and in good faith negotiated a settlement agreement. In the settlement agreement, Defendant agreed to pay a sum of $9,000 for a complete release of Plaintiff's claims. It is clear to this Court that both parties intended to settle the case and agreed upon the terms of the settlement when they reached their agreement.

The court ordered Hensley to "consummate the settlement on or before September 15, 2000," and warned him that his failure to do so would result in the dismissal of his claims against Alcon with prejudice and the assessment of costs against him. The court denied Taylor's motion to withdraw "as moot."

In response to this order, Hensley, *pro se*, wrote the court requesting reconsideration of its August 30 order and stating that he "did not lead nor infer to [his] attorney that [he] would sign the Confidential Settlement Agreement." Rather, he "merely stated that [he] would look it over." Once he read the agreement, Hensley told his counsel that he would not sign it. In this letter, Hensley pointed out that he was not "as disturbed with the settlement amount as [he was] with the releases" and other terms of the agreement, such as the denial of liability clause and reinstatement clause.

The court rejected Hensley's version of what transpired and, by order dated September 15, 2000, extended to September 22, 2000, the time within which Hensley could consummate the settlement agreement. The court again warned Hensley that his failure to sign the proposed settlement agreement would result in dismissal of his suit with prejudice and the assessment of costs against him. Also in the September 15 order, the court explained that the proposed settlement agreement, which it had received from Alcon on September 5, 2000, was "consistent with the Court's recollection of the terms of the settlement reached at the Final Settlement Conference" and that the agreement was "consistent with standard terms and conditions found

in such agreements." The court concluded that Hensley had "unreasonably refused to sign the agreement."

In response to the September 15 order, Hensley, again *pro se*, expressed "concerns and questions" regarding the settlement agreement and asked for reconsideration of the district court's order "after hearing [his] issues of why [he was] not satisfied with the enforcement." Hensley also indicated that he was in the process of obtaining new counsel.

By order dated September 25, 2000, the district court scheduled "a hearing in this matter" for October 4 and directed both Hensley and Taylor to appear.

On October 4, 2000, the district court held the hearing in the form of a conference among Alcon's counsel, Taylor, and Hensley. No court reporter was present and, therefore, no transcript exists of what occurred. Following this conference, the district court entered an order, dated October 4, 2000, dismissing Hensley's claims against Alcon with prejudice and assessing against Hensley Alcon's reasonable expenses and attorneys fees in seeking to enforce the settlement agreement. The court also granted Taylor his motion to withdraw as counsel for Hensley. In this order, the court stated that it had carefully considered Hensley's objections and found them "to be without merit." It reiterated that the proposed settlement agreement was "consistent with the court's recollection of the terms of the settlement reached at the Final Settlement Conference" and was "consistent with standard terms and conditions found in such agreements." Finally, the court concluded again that Hensley had "unreasonably refused to sign the agreement."

In a follow-up order dated November 15, 2000, the court determined that the amount of attorneys fees and expenses assessed against Hensley was $2,238.39.

From the judgment dismissing his case with prejudice and awarding attorneys fees in favor of Alcon, Hensley filed this appeal.

II

Court-facilitated settlements are an important aspect of the judicial process and of its purpose in providing an orderly and peaceful reso-

lution of controversies. But resolution by agreement, as distinct from trial, is appropriate only when the parties have actually reached agreement. Absent agreement, a party may demand and receive full judicial process, including a trial, for the resolution of legitimate disputes.

Although resolution of a motion to enforce a settlement agreement draws on standard contract principles, it may be accomplished within the context of the underlying litigation without the need for a new complaint. To this extent, district courts have inherent authority, deriving from their equity power, to enforce settlement agreements. *See Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981). The exercise of this authority has the "practical effect" of entering a judgment by consent. *Id.*

Because exercise of the authority to enforce settlement agreements depends on the parties' agreement to a complete settlement, the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement. *See Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983). "[I]t is improper for the district court, by its own motion or by agreement of the parties, to place itself in the role of 'final arbiter' of a settlement agreement." *Id.*

Thus, if an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is "comparatively insubstantial." *Millner*, 643 F.2d at 1009 (quoting *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). "[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement," *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997), and the fact that the agreement is not in writing does not render it unenforceable, *Alexander v. Industries of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990).

Thus, to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions. *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991); *Ozyagcilar*, 701 F.2d at 308. If there is a factual dispute over the existence

of an agreement, over the authority of attorneys to enter into the agreement,* or over the agreement's terms, the district court may not enforce a settlement agreement *summarily. See Alexander*, 901 F.2d at 41; *Millner*, 643 F.2d at 1010. Instead, when such factual disputes arise, the court must "conduct a plenary evidentiary hearing in order to resolve that dispute," *Millner*, 643 F.2d at 1009, and make findings on the issues in dispute, *see Ozyagcilar*, 701 F.2d at 308 n.*. If a district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement.

We review the district court's findings of fact for clear error and its decision whether to enforce a settlement agreement for abuse of discretion. *See Young*, 103 F.3d at 1194.

In this case, the evidence is ambiguous as to whether Hensley's claims were actually settled. Alcon and Hensley's attorney, Taylor, concurred that Hensley had agreed to release all claims against Alcon for $9,000. Hensley, however, disputes that a complete settlement agreement was reached. He avers that his attorney represented that Alcon would pay $9,000 to settle and he agreed only to "look . . . over" a proposed settlement agreement. When he saw the full agreement, Hensley refused to sign it, explaining that he was not "as disturbed with the settlement amount" as with the other terms of the agreement such as the reinstatement, confidentiality, and denial of liability clauses. At bottom, however, he asserts that he never agreed to *any* of the agreement's terms, including the amount.

Because the parties disagree over both the existence and terms of the settlement agreement, and perhaps Taylor's authority at the settlement conference, the district court could not summarily enforce the agreement. To resolve these factual questions, the district court was required to hold a plenary evidentiary hearing. *See Ozyagcilar*, 701 F.2d at 308 n.*. While the court did announce that it would conduct a hearing on October 4, 2000, that "hearing" consisted only of an off-

---

*Absent express agreement between an attorney and client, the attorney's implied authority is limited to negotiating a settlement, not agreeing to it. *See Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 229-30 (4th Cir. 1996).

the-record conference at which Hensley, Taylor, and Alcon's counsel appeared. As reported by the court, Hensley's objections to the settlement agreement were discussed at the conference and given "careful consideration." Nonetheless the court did not take any evidence, nor did it make any factual findings.

Alcon argues that, despite any deficiency in the October 4 hearing, the parties in fact reached an agreement during the May 17 settlement conference and that any dispute is over merely "ancillary" matters that were unimportant to the essence of the agreement. Unfortunately, however, no record was made of the May 17 settlement conference, and all we are left with are disputed claims about what transpired. Hensley's September 11 letter to the court indicates that he did not agree to the $9,000 figure but agreed only to "look [the agreement] over." Moreover, it is not clear from the record whether the terms not specifically addressed at the May 17 settlement conference — such as the "confidentiality," "denial of liability," and "reinstatement" clauses — were merely ancillary and unimportant. Even if these terms were "standard" terms, there is no evidence in the record to indicate that they were agreed to and that they were not material. These are all matters that should have been addressed at a plenary hearing and that should have been the subject of formal fact-finding by the district court.

Accordingly, we must remand these issues to the district court to resolve following a plenary hearing. If the court finds that a settlement was reached and is able to determine the terms and conditions of the settlement, it may enforce the settlement agreement through an order. On the other hand, if it finds that no settlement agreement was reached or that a material term of settlement was not agreed to, then it may not enforce the settlement nor supply a material term. Rather, it must allow Hensley to proceed on the merits.

Because of the district judge's personal involvement in the factual circumstances relevant to the issues on remand, we remand to a different district judge to conduct the plenary hearing.

## III

We turn now to the district court's dismissal of the underlying suit with prejudice and its award of attorneys fees.

When it concluded that a settlement agreement had been reached in this case, the district court directed Hensley "to consummate the settlement" by September 15, 2000, or have his suit "dismissed with prejudice." When Hensley protested, asserting that he had not agreed to the terms of the agreement that the court ordered him to sign, the district court disagreed and concluded that "Hensley has unreasonably refused to sign the agreement." The court gave Hensley a short extension but again directed him to sign the submitted agreement by September 22, 2000, or have his suit "dismissed with prejudice and costs assessed to [him]." When Hensley asked for a hearing of "[his] issues of why [he was] not satisfied with the enforcement," the court held a conference at which Hensley explained his position. The court overruled his objections concluding, "As the plaintiff has unreasonably refused to sign the agreement, the court DISMISSES this case with prejudice against him." It also assessed "reasonable expenses and attorneys fees" against Hensley, which it ultimately determined to be $2,238.89.

In sum, for Hensley's "unreasonable" refusal to sign the settlement agreement — an agreement with which he took issue — the district court forfeited Hensley's underlying wrongful termination claim and ordered him to pay Alcon $2,239 in attorneys fees and expenses. Because the appropriate relief might again, on remand, become an issue if the district court concludes that a settlement was reached, we review these sanctions for abuse of discretion.

While the district court has within its inherent power the ultimate authority to dismiss a case with prejudice, *see United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993), dismissal other than on the merits must be supported by a finding of bad faith or other similar abuse. Even then, because it is "the most extreme sanction," dismissal may not be entered without the court's first considering numerous factors, including the availability of other sanctions. *Id.* at 462-63 (enumerating six factors). In this case, not only is the record devoid of the bad faith or abuse necessary to justify dismissal, *see Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991); *Shaffer*, 11 F.3d at 462 (noting "that when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action"), but the district court also

failed to consider the six factors enumerated in *Shaffer*, particularly whether other less harsh but effective sanctions were available. In this case, the court could have specifically enforced the settlement agreement or could have included its terms in a decree similar to a consent decree. Accordingly, we conclude that, based on the record before us, the sanction of dismissal was inappropriate.

Also under its inherent powers, the district court has authority to shift attorneys fees, but again only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so. *See Chambers*, 501 U.S. at 45-46. Without such findings, under the American Rule, each party remains responsible for its own attorneys fees absent explicit statutory authority or agreement to shift them. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 250 (1975). Because the district court made no findings of bad faith or abuse, fee-shifting was inappropriate in this case.

Accordingly, we reverse both the sanction of dismissal with prejudice and the sanction of fee-shifting that the district court imposed in this case.

IV

In sum, we reverse the judgment of dismissal with prejudice and the award to Alcon of its attorneys fees, and we remand this case to the district court and to a different district judge to conduct a plenary hearing on whether a complete settlement agreement was reached and if so, to determine its terms and conditions. If the court is unable, following such a hearing, to enforce a settlement agreement, it shall afford Hensley the opportunity to proceed with his case on the merits.

*REVERSED AND REMANDED FOR FURTHER PROCEEDINGS*

DIANA GRIBBON MOTZ, concurring in the judgment:

I concur only in the judgment. The district court made a commendable attempt to work with the parties to settle this case. Unfortunately, no one — neither the parties nor the court — put the terms of the set-

tlement on the record. Similarly, no transcript was made of the hearing held on Alcon's motion to enforce the asserted settlement agreement. Thus, appellate review is impossible. For these reasons, I agree that we must remand the case for on-the-record fact finding on the disputed issues.