**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PERRY WILLIAMS; TEDDI WILLIAMS,
d/b/a Williams Transport,
     *Plaintiffs-Appellees,*

v.

PROFESSIONAL TRANSPORTATION,
INCORPORATED; UNITED LEASING,
INCORPORATED; CSX
TRANSPORTATION, INCORPORATED,
    *Defendants-Appellants.*

No. 03-1387

PERRY WILLIAMS; TEDDI WILLIAMS,
d/b/a Williams Transport,
     *Plaintiffs-Appellants,*

v.

PROFESSIONAL TRANSPORTATION,
INCORPORATED; UNITED LEASING,
INCORPORATED; CSX
TRANSPORTATION, INCORPORATED,
    *Defendants-Appellees.*

No. 03-1453

Appeals from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, Chief District Judge.
(CA-95-81)

Argued: January 21, 2004

Decided: October 29, 2004

Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge Widener wrote the opinion, in which Judge Williams concurred. Judge Luttig wrote a concurring and dissenting opinion.

## COUNSEL

**ARGUED:** Andrew Stephen Zettle, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, Huntington, West Virginia, for Appellants/Cross-Appellees. Michael Warren Carey, CAREY, SCOTT & DOUGLAS, PLLC, Charleston, West Virginia, for Appellees/Cross-Appellants. **ON BRIEF:** John H. Mahaney, II, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, Huntington, West Virginia, for Appellants/Cross-Appellees.

## OPINION

WIDENER, Circuit Judge:

This case is a contract dispute between CSX Transportation, Inc. (CSXT) and Perry and Teddi Williams (Williams), who own a private limousine service used by CSXT to transport its train crews and property within West Virginia. In its most recent order, the district court ordered CSXT to pay Williams $1,891,028.21 and to enter into a five-year, exclusive, noncancellable, but transferable contract with Williams, with an effective starting date of July 23, 2002. CSXT appeals this order, arguing that the district court violated the Johnson Act of 1934 by awarding Williams damages and miscalculated the contract's starting date. We affirm.

### I.

The dispute between CSXT and Williams began over ten years ago. It has played out before the West Virginia Public Service Commission (PSC), the state agency charged with setting public utility rates and resolving rate disputes, and in this lawsuit, which Williams brought against CSXT and two of the Williams' competitors, who are

represented by CSXT under indemnity agreements.* CSXT has accused Williams of overcharging and improper billing, while Williams has accused CSXT of trying to put Williams out of business, either by supporting competitors or refusing to pay for services rendered. On May 23, 1997, however, the parties settled their dispute. The terms were as follows:

1.  CSXT would pay Williams $140,000;

2.  CSXT and Williams would enter into a five-year exclusive, noncancellable, but transferrable contract that would make Williams the exclusive provider of intrastate crew transportation services in certain West Virginia areas; and

3.  CSXT agreed to dismiss its pending PSC overcharge case against Williams.

The parties at settlement left open the rate to be paid under the five-year contract, agreeing to meet and negotiate such a rate. The settlement was contingent upon Williams' success in another PSC proceeding, No. 30020-97-FC, that sought to declare dormant the operating authority of one of Williams' competitors.

Williams did prevail in No. 30020-97-FC, removing the contingency on April 10, 1998, but negotiations proved unsuccessful to fix the contract rate which had been left open as agreed. In addition, while CSXT initially paid Williams for some post-settlement services in the amounts billed in the invoices, in March 1998 it began rejecting some invoices and paying others at a lower rate. Williams moved to enforce the settlement agreement in June, 1998, and the district court granted the motion on December 11, 1998. The district court found that CSXT had breached the agreement by prolonging rate negotiations, refusing to pay invoices submitted after the settlement agreement, filing a new overcharge case before the PSC, and supporting McLine Transportation, another competitor of Williams, before the PSC. The district court ordered CSXT to:

---

*CSXT was later made a party to the case.

1. Pay the $140,000 plus interest owed to Williams under the May 1997 settlement agreement.

2. Make immediate payment to Williams of all past due invoices, with interest, "at the rates specified in Williams' current tariff in the amounts set forth in those invoices." These payments were to continue until the new contract was executed.

3. Enter into the five-year contract as mandated by the May 1997 settlement, using the rate "contained in Williams' current tariff unless, and until, the parties agree on a new, or different, rate. Any dispute as to the tariff will be submitted to the [PSC] for resolution."

CSXT appealed, and on September 18, 2000, it also moved for a stay of the district court's order. We granted the stay on October 6, 2000. On appeal, CSXT argued that the district court's order exceeded its jurisdiction, in violation of the Johnson Act of 1934, because it resolved a public utility rate dispute.

The Johnson Act provides that:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or rate-making body of a State political subdivision where:

(1) Jurisdiction is based solely on diversity of citizenship . . .; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342 (2000). CSXT argued that, because the district court's December 1998 order required payment of past due invoices at the invoice rate, the order affected rates chargeable by a public utility and thus ran afoul of the Johnson Act.

We disagreed, holding that the order "did not resolve the rate interpretation dispute between the parties, rather it directed the parties to submit disputes about the interpretation of the tariff to the Public Service Commission." *Williams v. Prof'l Transp., Inc.*, 294 F.3d 607, 612 (4th Cir. 2002). Instead, we endorsed "Williams' characterization of the court's order as one merely enforcing a settlement agreement." *Williams*, 294 F.3d at 612.

CSXT also argued that the five-year contract should include a retroactive start date of April 10, 1998, the date the contingency was removed and the settlement took effect. We declined to consider this argument, as CSXT failed to raise it before the district court. *Williams*, 294 at 614 (citing *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993)).

On remand, CSXT interpreted our opinion to mean it needed to pay past due invoices at the invoice rate only after that invoice rate had been submitted to and approved by the PSC. Maintaining its prior position, CSXT continued to pay for services rendered not in the amounts billed in Williams' invoices (the invoice rate), but at a lower rate it deemed applicable. This lower rate, which we call the N & W rate, was a tariff rate approved by the PSC in a dispute between Williams and another railroad, Norfolk & Western Railway Co. CSXT refused to pay the balance between the N & W rate and the invoice rate, and Williams moved to have the district court enforce its December 1998 order.

On March 14, 2003, the district court granted Williams' motion. It first ordered that CSXT pay Williams $1,891,028.21. This amount represents the difference, including interest, between the charges billed in Williams' invoices and the amount paid by CSXT during the period from March 6, 1998 (when CSXT began rejecting and discounting the invoices) until October 8, 2002 (when the district court held a hearing on Williams' motion to enforce the December 1998 order). The order also makes clear that CSXT must continue "to pay

Williams' invoices in the amount billed UNLESS AND UNTIL it secures a new contract with Williams." (emphasis in original). Finally, the district court ordered that the five-year contract should have a retroactive start date of July 23, 2002, the day we issued our mandate in CSXT's first appeal.

## II.

CSXT now argues that (1) the damages award sets the rate to be used for charges accrued during the pre-contract period and thus contravenes the Johnson Act and (2) the performance start date for the five-year contract is incorrect. We possess appellate jurisdiction under 28 U.S.C. § 1291. We review *de novo* the question of whether the district court's order violates the Johnson Act and thus was entered without subject matter jurisdiction. *Hill v. Kan. Gas Serv. Co.*, 323 F. 3d 858, 863 (10th Cir. 2003) (internal citations omitted). We review the district court's order enforcing the settlement agreement for an abuse of discretion. *Young v. FDIC*, 103 F.3d 1180, 1194 (4th Cir. 1997).

## A.

CSXT first contends that the district court's order is contrary to both the Johnson Act and our prior opinion, and resolved the rate dispute as to the pre-contract period. FAs we noted in CSXT's prior appeal, the Johnson Act's limitation on jurisdiction applies only when all of its conditions have been met, and the party invoking the Johnson Act has the burden to show these conditions have been met. *Williams*, 294 F.3d at 612 (internal citations omitted).

According to CSXT, our prior opinion required any rate dispute to be submitted to the PSC "before the District Court could take further action in enforcing the settlement." Appellants' Br. at 27. By requiring CSXT to pay the $1.8 million before the PSC determines which rate should apply to pre-contract period services, CSXT argues, the district court improperly resolved the pre-contract rate.

Our holding today is the same as it was in 2002: there is no Johnson Act violation, because the district court's order did not "enjoin, suspend or restrain the operation of, or compliance with, any order

affecting rates." 28 U.S.C. § 1342. The district court did not select a rate and insulate it from PSC review. Rather, it enforced a settlement agreement between the two parties without disturbing the principle that "any rate disputes and new rates agreed upon by the parties must be submitted to the Public Service Commission." *Williams*, 294 F.3d at 612. Until CSXT and Williams go before the PSC, however, the rate applicable to services rendered during both the pre-contract and the five-year contract period is the invoice rate.

Nor did the district court's order misinterpret our prior opinion. What we affirmed was what the district court ordered as far back as 1998: immediate payment of past due invoice amounts at the invoice rates. We did not resolve the propriety of either the pre-contract or the contract rate, and neither did the district court. There is no order of the PSC enjoined, suspended, or restrained, neither is there a similar order of any political subdivision of West Virginia. There being no such order, nor enjoining, suspending, or restraining any such order, there is no violation of the Johnson Act, 18 U.S.C. § 1342.

## B.

CSXT next argues that the district court abused its discretion in selecting July 23, 2002 as the effective starting date for the contract's performance period. CSXT contends that the contract should be deemed to have begun on either April 10, 1998, when the contingency to the May 1997 settlement was removed, or on November 19, 1999, when CSXT submitted a proposed contract to Williams that it claims conformed with the district court's December 1998 order. Williams cross-appeals, arguing that the contract period has not yet begun because the parties have not entered into a contract on their own. It contends that we should reverse and remand with the direction that "the contract begins to run upon the execution of the contract by the parties."

District courts have inherent authority, derived from their equity power, to enforce settlement agreements. *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). There is no question that a settlement agreement existed; rather, this discrete aspect of the dispute is over a term of the agreement, when should the five-year per-

formance period begin? In such a situation, district courts are not to enforce settlement agreements summarily, but must conduct a plenary hearing and make findings on the issue. *Hensley*, 277 F.3d at 541 (citing *Millner*, 643 F.2d at 1009, and *Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990)). The district court adhered to this principle, holding a hearing on October 8, 2002 and finding in its subsequent order that the earliest date the contract could have begun was July 23, 2002.

The district court chose July 23 because the issue of our mandate on that date dissolved the stay of the district court's December 1998 order, a stay which CSXT sought, and left the parties "free to enter into a new contract." It also found that July 23rd was the earliest date "the parties could have commenced the contract." These findings are largely factual and are not clearly erroneous under Fed. R. Civ. P. 52. We agree with the July 23rd date found by the district court and are of opinion it did not abuse its discretion in fixing that date.

The order of the district court appealed from is accordingly

*AFFIRMED.*

LUTTIG, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I and II.A of the court's opinion, but dissent from Part II.B, which affirms the district court's selection of July 23, 2002, as the start date of the contract. As the majority notes, the district court refused to hold that the contract term began to run before this date, because until that time the district court's December 1998 order had been stayed by this court, on a motion filed by CSXT. J.A. 321. However, in its September 18, 2000, motion, CSXT only sought a stay of enforcement of the money judgment entered by the district court, not of the district court's order to enter into a contract with Williams. J.A. 79. CSXT claims, and the district court did not dispute, that CSXT offered on November 19, 1999, to perform the contract on precisely the terms set forth by the district court in its December 1998 enforcement order. *See* J.A. 321. A fair reading of our order, especially given the motion made by CSXT, is that we stayed only the monetary judgment imposed by the district court. J.A. 107. And the parties apparently so understood our order; since the time that CSXT

made this offer, it claims that it has exclusively dealt with Williams as required under the settlement agreement, a claim seemingly accepted by the district court. *See* J.A. 321 (offering, in support of its finding that CSXT had failed to comply with the terms of the December 1998 order, only CSXT's refusal to pay the full amount of Williams' invoices).

Because Williams began to receive the benefit of the agreement guaranteeing it a five-year exclusive contract on November 19, 1999, when CSXT agreed to comply with the terms of the enforcement order, I would hold that the contract began to run on that date. The date that we dissolved our mandate, July 23, 2002, ought have no bearing whatsoever on the question of when the parties agreed that the contract began to run.