**Valerio LOPEZ, et al., Plaintiff,**

v.

**XTEL CONSTRUCTION GROUP, LLC, et al., Defendants.**

**Case No. PWG–08–1579.**

United States District Court, D. Maryland, Northern Division.

June 15, 2011.

---

Michele Estrin Gilman, Erika Kajurita Wilson, Kathryn E. Loncarich, Baltimore, MD, Kimberley Propeack, Zorayda Moreira Smith, Hyattsville, MD, for Plaintiff.

Mike Bahmani, Crofton, MD, pro se.

## *MEMORANDUM AND ORDER*

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses the Motion to Enforce Oral Settlement Agreement, ECF No. 116, that Plaintiffs Valerio Lopez, *et al.* filed, along with a Memorandum of Law in support of the motion, ECF No. 116–1. Defendants XTEL Construction Group, LLC ("XTEL") and Mike Bahmani have not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2; May 3, 2011 Order, ECF No. 119. For the reasons stated herein, Plaintiffs' Motion to Enforce Oral Settlement Agreement is GRANTED. This Memorandum and Order disposes of ECF No. 116.

■ Preliminarily, I note that on December 8, 2010, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Chasanow assigned this case to me for all proceedings by consent of the parties. ECF No. 99. Shortly thereafter, the parties asked to speak with me about a possible settlement agreement, and I conducted settlement conference calls on February 7 and 17, 2011. The calls resulted in a settlement being reached. Thereafter, counsel for Defendants filed a motion to strike his appearance, ECF No. 114, which I granted, ECF No. 119. Defendants are now proceeding without counsel. Now, faced with Plaintiffs' motion to enforce the settlement agreement that resulted from those settlement conference calls, I must preliminarily consider whether, pursuant to 28 U.S.C. § 455, I must disqualify myself from enforcing a settlement agreement when I was present for the negotiations.

■ 28 U.S.C. § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute "carr[ies] an 'extrajudicial source' limitation, under which bias or prejudice must, as a general matter, stem from 'a source outside the judicial proceeding at hand' in order to disqualify a judge." *Belue v. Leventhal*, 640 F.3d 567, 572 (4th Cir.2011) (concluding that judge's opinions formed *during* the proceedings did not necessitate the judge's disqualification) (quoting *Liteky v. United States*, 510 U.S. 540, 545, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)); *see Liteky*, 510 U.S. at 553, 114 S.Ct. 1147 (concluding that "extrajudicial source limitation" applies to § 455(a)). This so-called "extra-judicial source" doctrine is born of the common sense view that ordinarily the circumstances suggesting or creating the appearance of partiality cannot reasonably be derived from information revealed in the normal course of litigation because it is natural for judges to form attitudes about litigants and issues before the court as the facts unfold, and no reasonable person would question the impartiality of judges who do.

Charles Gardner Geyh, *Judicial Disqualification: An Analysis of Federal Law* 30 (Fed. Judicial Ctr. 2010).

■ Thus, a judge must recuse himself or herself if an extrajudicial source provides a reasonable factual basis for calling the judge's impartiality into question. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). "The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *Id.; see Liteky*, 510 U.S. at 548, 114 S.Ct. 1147 ("[W]hat matters is not the reality of bias or prejudice but its appearance."). Further, the perceived bias or prejudice need not be "personal." *Liteky*, 510 U.S. at 548, 114 S.Ct. 1147.

■ Conversely, if a judge's "familiarity with the facts of a case stem from [the judge's] judicial conduct in presiding over earlier proceedings," the judge typically need not recuse himself or herself, even if the judge has formed an opinion about the case.[1] *In re Beard*, 811 F.2d at 827; *see Liteky*, 510 U.S. at 551, 114 S.Ct. 1147; *Belue*, 640 F.3d at 572–73. For example, if a judge presides over a settlement conference, that "[g]enerally . . . does not, by itself, create an appearance of partiality." *Wiley v. United Parcel Serv.*, 11 Fed. Appx. 181, 182 (4th Cir.2001) (affirming

---

1. For a bias "that arises from what the judge learns in the courtroom" to be the basis for disqualification, it "must be truly excessive," indeed " 'so extreme as to display clear inability to render fair judgment.' " Geyh, *supra*, at 31 (quoting *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147).

summary judgment ruling by judge who previously conducted settlement conference).

*Proa v. NRT Mid–Atlantic, Inc.*, 608 F.Supp.2d 690 (D.Md.2009), is not on all fours with this case but nonetheless provides helpful guidance. There, after Magistrate Judge Gauvey presided over the settlement conference, the district court judge referred the case back to her for discovery. *Id.* at 690. The Plaintiffs moved to vacate Judge Gauvey's appointment and her discovery rulings, *id.*, alleging that her "dual role as both discovery magistrate and settlement magistrate generates some issue of bias or conflict," *id.* at 693. The Court disagreed and concluded that "familiarity that stems from [the judge's] experience when [the judge] presided over the settlement conference .... is explicitly *not* a legitimate reason to disqualify [the judge]." *Id.* at 694 (emphasis in original) (relying on *In re Beard*, 811 F.2d at 827).

I have neither formed nor offered any opinion as to the merits of the case before me. The only knowledge I have of the case stems from my involvement in the settlement conferences. There is no extrajudicial source of knowledge to raise any doubt in a reasonable person as to my impartiality. Therefore, I need not recuse myself under 28 U.S.C. § 455(a). *See Belue*, 640 F.3d at 572–73; *In re Beard*, 811 F.2d at 827; *Proa*, 608 F.Supp.2d at 694.

█ A judge also is required to disqualify himself or herself if the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding" or if the judge is "likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(1), (5)(iv). As with § 455(a), the judge's knowledge referenced in § 455(b)(1) must "stem from a 'source outside the judicial proceeding at hand' in order to disqualify [the] judge." *Belue*, 640 F.3d at 572 (quoting *Liteky*, 510 U.S. at 545, 114 S.Ct.

1147). Notably, unlike § 455(a), § 455(b)(1) pertains to knowledge that is both actual and personal. *See Liteky*, 510 U.S. at 548, 114 S.Ct. 1147.

In this regard, *McGuire v. Warner*, No. 05–40185, 2009 WL 3586527 (E.D.Mich. Oct. 29, 2009), is on point, although not binding. There, during litigation, the parties reached a settlement agreement, the court dismissed the action, and then, when the defendants failed to pay the settlement proceeds to the plaintiffs, the plaintiffs moved the court to enforce the settlement agreement. *Id.* at *3. The defendants moved to disqualify the judge from deciding the motion because they planned to call the judge as a witness, *id.*, and "because th[e] Court conducted settlement conferences with the parties during the course of th[e] litigation," *id.* at *4. The court noted that the Second Circuit addressed a "nearly identical situation" in *Omega Engineering v. Omega, S.A.*, 432 F.3d 437 (2d Cir.2005). In *Omega*, the district judge referred a motion to enforce a settlement agreement to the same magistrate judge who conducted the settlement conference, the defendant moved to disqualify the magistrate judge, the magistrate judge denied the motion for disqualification and enforced the settlement agreement, and the district court adopted the magistrate judge's ruling. *Id.* at *4. On appeal, the Second Circuit said that the magistrate judge did not have to recuse himself because the knowledge he gained during the settlement conference " 'was not extrajudicial.' " *Id.* at *5 (quoting *Omega*, 432 F.3d at 447–48). The district court said that it "continue[d] to believe that any knowledge gained by th[e] Court in connection with its role in facilitating the settlement conferences in this action [was] not a proper ground for disqualification under § 455(b)(1)." *Id.* Further, it stated that the judge would not be called as a witness because Fed.R.Evid. 605

"prohibits a judge from testifying as a witness in a proceeding over which he presides." *Id.* at *5 n. 3.

Here, I could not be called as a witness because I am presiding over this case for all proceedings. *See* Fed.R.Evid. 605.[2] Moreover, as noted, I only know about the case because I presided over the settlement conferences; I have no extrajudicial knowledge, personal or otherwise. Further, counsel for both parties were present for the duration of both telephone settlement conferences. Thus, even if *ex parte* communications during settlement conference can be perceived as extrajudicial, *see Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996) (holding that judge's disqualification was required because judge held *ex parte* meetings with experts; meetings were extrajudicial even though they were held in chambers), no *ex parte* communications occurred in this case. Therefore, I need not recuse myself under 28 U.S.C. § 455(b)(1) or (5)(iv). *See McGuire*, 2009 WL 3586527, at *5 & n. 3. As the other provision of 28 U.S.C. § 455 are not relevant to this case, my disqualification is unnecessary. I shall address the merits of Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs filed this suit under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, to recover unpaid wages from Defendants. Pls.' Mem. 1. Trial was set for the week of March 7, 2011. ECF No. 100. During a telephone settlement conference before me on February 7, 2011, counsel for both parties agreed to terms for settlement, and I "stated that these terms were fair." Gilman Aff. ¶¶ 3, 4, ECF No. 116–2. According to the terms to which the parties agreed, Defendants would pay Plaintiffs $10,000 through an initial installment of $1,500 and $500 monthly installments thereafter until the settlement was paid in full. *Id.* ¶ 3. Counsel also agreed that, should Defendants miss one monthly payment, the cure period would be thirty days, and the Court would render a default judgment for Plaintiffs if Defendants failed to make a payment after the cure period expired. *Id.* Upon default, Plaintiffs could seek to collect the outstanding balance of the settlement amount, including reasonable costs and attorney's fees. *Id.*

Thereafter, counsel discussed these terms with their clients and "obtained [their] clients' consent and authority to settle on their behalf." Gilman Aff. ¶ 5. Counsel confirmed their clients' consent to the agreement when the settlement conference continued before me by telephone on February 17, 2011. *Id.* Additionally, "Plaintiffs agreed to cancel the March 7, 2011 trial in light of the settlement." *Id.* I ordered the parties "to submit a written memorialization of the settlement agreement" by March 17, 2011. *Id.* Plaintiffs' counsel contacted Defense counsel for Defendants to sign the settlement agreement on March 17, 2011, but Defense counsel said that, earlier that day, Defendant Mike Bahmani, "on behalf of himself and his company Defendant XTEL, 'withdr[ew] his consent' to the settlement in its entirety." *Id.* ¶¶ 6–7.

## II. ANALYSIS

When parties to litigation pending in district courts enter into agreements to settle their disputes, the courts "have inherent authority, derived from their equity power, to enforce settlement agreements." *Williams v. Prof'l Transp., Inc.*, 388 F.3d 127, 131–32 (4th Cir.2004); *see Hensley v. Alcon Labs., Inc.*, 277 F.3d 535,

---

**2.** Fed.R.Evid. 605 provides: "The judge presiding at the trial may not testify in that trial as a witness."

540 (4th Cir.2002); *Millner v. Norfolk & W. Ry.*, 643 F.2d 1005, 1009 (4th Cir.1981); *King v. Sallie Mae, Inc.*, No. PJM–08–2934, 2009 WL 2596643, *3 (D.Md. Aug. 20, 2009). But, "[i]f there is a factual dispute over the existence of an agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily*." *Hensley*, 277 F.3d at 541 (emphasis in original) (footnote omitted); *see Williams*, 388 F.3d at 132. The court first must "conduct a plenary evidentiary hearing and make findings on the issue." *Williams*, 388 F.3d at 132; *see Millner*, 643 F.2d at 1009; *Hensley*, 277 F.3d at 541. Before the court may enforce the agreement, it " '(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.' " *King*, 2009 WL 2596643, at *3 (quoting *Hensley*, 277 F.3d at 540–41) (internal citations omitted). Notably, "[t]he fact that a party may have 'second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement.' " *Id.* at *3 (quoting *Hensley*, 277 F.3d at 540) (internal citations omitted).

■■■■ The court applies standard contract principles when considering a motion to enforce a settlement agreement. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir.2004); *Hensley*, 277 F.3d at 540. Therefore, the agreement "exists once offer, acceptance, and consideration are exchanged between the parties, regardless of whether the agreement is oral or written." *Clayton v. Ameriquest Mortg. Co.*, No. 1:–02CV415, 2004 WL 734978, at *3 (M.D.N.C. Apr. 5, 2004). "It is universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract," *Cochran v. Norkunas*, 398 Md. 1, 919 A.2d 700, 708 (2007); there must have been "an actual meeting of the minds regarding contract formation," *id.* at 713. Additionally, "[i]f the parties do not intend

to be bound until a final agreement is executed, there is no contract." *Id.*

■■■■ Here, there is no "factual dispute over the existence of [the] agreement." *See Hensley*, 277 F.3d at 541. Plaintiffs allege that the agreement exists, and Defendant Mike Bahmani, rather than arguing to the contrary, simply insisted that "on behalf of himself and his company Defendant XTEL, [he] 'withdr[ew] his consent' to the settlement in its entirety." Gilman Aff. ¶¶ 6–7. Further, Defendants have not filed a response. Thus, a plenary evidentiary hearing is unnecessary. *See Hensley*, 277 F.3d at 541.

■■■■ Moreover, it is clear that the parties reached a complete agreement, the terms of which are readily ascertainable. Defendants offered a payment of $10,000 to settle Plaintiff's claims in full, and Plaintiffs accepted that offer. *See* Gilman Aff. ¶ 3; *Clayton*, 2004 WL 734978, at *3. The terms included the amount of payment to settle the case ($10,000), a payment schedule ($1500 initially, $500 per month thereafter until paid in full), and consequences for any failure to make prompt payments (default judgment). *See* Gilman Aff. ¶ 3. Consideration was exchanged in that Plaintiffs agreed to cancel the trial in this case, and the trial was cancelled. *See* Gilman Aff. ¶ 5; *Clayton*, 2004 WL 734978, at *3. Put another way, there was a manifestation of mutual assent between the parties. *Cochran*, 919 A.2d at 708.

The agreement formed on February 17, 2011, when counsel for both parties stated that they had explained the terms to their clients, the clients agreed to the terms, and the clients gave their counsel the authority to enter into the agreement on their behalf. *See* Gilman Aff. ¶ 5. There was no indication that "the parties [did] not intend to be bound until a final agreement is executed." *See Cochran*, 919 A.2d

at 713. Therefore, the agreement did not need to be in writing or signed by the parties; the oral agreement was sufficient. *See Clayton,* 2004 WL 734978, at *3.

These facts, which Plaintiffs presented in their motion and in their counsel's affidavit, are consistent with the contemporaneous notes prepared in the February 7 and 17, 2011 conferences themselves, which are attached hereto UNDER SEAL as Exhibits A and B. Further, I stated at the February 17, 2011 continued settlement conference that the terms were fair, which suggests that the parties had discussed the complete agreement such that I could ascertain its fairness. Also, I ordered the parties to "submit a written memorialization of the settlement," which shows that the settlement already existed orally. *See* Gilman Aff. ¶ 5. Moreover, the Court memorialized the settlement agreement in a letter order, in which I stated that I understood that "this case has settled," and I cancelled the trial. Feb. 18, 2011 Letter Order, ECF No. 112. I find that the parties entered into a complete agreement on February 17, 2011, with the terms stated above.

Therefore, on the record before me, Plaintiffs' Motion to Enforce Oral Settlement Agreement is GRANTED.

So ORDERED.