FRANKLIN LIVESTOCK, INC., J and K Cattle, Kevin Van Beek, and Jay Leloux, Plaintiffs,

v.

BOEHRINGER INGELHEIM VETMEDICA, INC., Defendant.

NO. 5:15–CV–63–BO

United States District Court, E.D. North Carolina, Western Division.

Signed April 17, 2017

Filed 04/18/2017

A. Lee Hogewood, III, Matthew David Duncan, Kaitlin C. Dewberry, Matthew Thomas Houston, K&L Gates LLP, James Niels Jorgensen, Raleigh, NC, for Plaintiffs.

Alex J. Hagan, Jeremy M. Falcone, Ellis & Winters, LLP, Raleigh, NC, Jonathan H. Still, Kyle V. Miller, Michael E. McWilliams, Butler Snow LLP, Ridgeland, MS, for Defendant.

## ORDER

TERRENCE W. BOYLE, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on defendant's amended motion to dismiss the claims of Franklin Livestock, Inc. and for attorney's fees and costs. [DE 90]. The matter has been fully briefed and is ripe for disposition. A hearing on the motion was held before the undersigned on January 12, 2017 in Elizabeth City, North Carolina. For the following reasons, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are companies and individuals engaged in the cattle industry. Plaintiff Franklin Livestock's operation in Franklin County, North Carolina bought and "preconditioned" cattle on behalf of customers located in other states until such customers requested shipment for "finishing." One such set of customers were plaintiffs J and K Cattle, Kevin Van Beek, and Jay Leloux ("J and K Cattle") who engaged the services of Franklin Livestock at various times between 2010 and 2013. During this time, Franklin Livestock purchased vaccines which were designed and manufactured by Boehringer Ingelheim Vetmedica, Inc ("defendant"). Plaintiffs jointly alleged in their complaint that, after ad-

ministering these vaccines to their cattle, plaintiffs' cattle suffered symptoms of endotoxemia, leading to death or severely reduced performance. [DE 1–1]. Plaintiffs alleged that they ultimately lost thousands of cattle and suffered diminished value of thousands of additional cattle, and the complaint essentially alleged that high levels of endotoxins within the vaccines manufactured by defendant caused these injuries. *Id.*

Plaintiffs filed this action in Franklin County Superior Court seeking relief due to breaches of express and implied warranties; negligent design and manufacture; failure to warn; failure to comply with federal laws governing the design, manufacture, and sale of animal vaccines; and unfair and deceptive acts or practices. [DE 1–1]. Defendant removed the case to this Court on the basis of federal question and diversity jurisdiction and filed its answer on February 20, 2015. [DE 1, 8]. In its answer defendant raised various affirmative defenses, including defenses asserting independent and superseding causes of damage as well as sole or contributory negligence on the part of plaintiffs. [DE 8]. Defendant has asserted that plaintiffs did not experience death loss in the magnitude that they have alleged; that if plaintiffs did experience an excessive death loss, it was due to operational problems at Franklin Livestock (including, among other things, improper feed selection, vaccine selection, vaccine administration); and that if Franklin Livestock experienced an excessive death loss, it was due to an outbreak of respiratory disease caused by bacteria for which defendant's vaccines are neither designed nor labeled to protect against (specifically *Histophilus somni* or *mycoplasma bovis* ). *Id.*

On September 26, 2016, defendant was granted leave to amend its answer in order to raise additional affirmative defenses.

[DE 86]. In moving to amend, defendant asserted that through discovery it uncovered evidence that plaintiffs Franklin Livestock defrauded plaintiffs J and K Cattle. [DE 53]. Defendant alleged that when J and K Cattle requested shipment of their cattle at various times during the relevant time period, Franklin Livestock was unable to produce all the cattle requested due to misconduct and informed J and K Cattle that its cattle had died. *Id.* Defendant alleged that the damages claimed by plaintiffs are due not to death loss, but rather to Franklin Livestock's misrepresentations and wrongful billing practices. *Id.* As such, defendant amended its answer to raise additional defenses based on Franklin Livestock's alleged intervening fraudulent acts and and the negligent acts and omissions of all the plaintiffs. [DE 88].

Then, on October 18, 2016, defendant filed the instant amended motion seeking dismissal of the claims of Franklin Livestock. [DE 90]. Defendant contends that Franklin Livestock has abused the discovery process by intentionally withholding information during discovery that exculpates defendants and by producing fabricated documents. *Id.* According to defendant, Franklin Livestock has only recently produced more than 15,000 pages of documents that should have been produced long ago ("withheld documents") and additionally has disavowed the authenticity of more than 6,250 pages of documents that were previously produced ("disavowed documents"). *Id.* Defendant believes that, by disavowing previously produced documents and producing new documents, Franklin Livestock has revealed information that exculpates defendants and shows that Franklin Livestock defrauded the other plaintiffs in this case. *Id.* Defendant argues that such violations of the discovery process warrant the severest of sanctions: dismissal of Franklin Livestock's claims and monetary sanctions. *Id.*

Specifically, defendant asserts that the disavowed documents were fabricated for purposes of this litigation and argues that the withheld documents are exculpatory. In support of these assertions, defendant first demonstrated that there are material differences between vaccination records in the disavowed documents and vaccination records which were withheld. [DE 91]. When the parties initially conducted discovery, Franklin Livestock produced documents that it represented were original, contemporaneous vaccination records. *Id.* After plaintiff recently disavowed these records and produced the actual vaccination records, defendant identified material differences between the sets of documents which it believes are intentional alterations. *Id.* Defendant argues that these alterations skewed the results of any statistical analysis of the records against defendant and in favor of Franklin Livestock, for example (1) by listing an animal as having received defendant's vaccine and then died, when in fact that deceased animal never received defendant's vaccine; (2) by listing a deceased animal as having received only defendant's vaccine when in fact they received both defendant's and other vaccines before dying; (3) by listing a deceased animal as having received defendant's vaccine when the actual records showed them never receiving any vaccine; (4) by listing animals who died as having received no vaccines when in fact they received vaccines made by others; and (5) by sometimes excluding entirely from the records animals who received vaccines made by others. *Id.*

Defendant also provided examples of how the withheld documents reveal instances of Franklin Livestock billing multiple customers, including co-plaintiff J and K Cattle, for the same groups of cattle. [DE 91]. According to defendant, this makes it difficult or impossible to determine what are the "missing" animals for which plaintiffs seek recovery against defendant. *Id.* Third, defendant asserts that the withheld documents demonstrate that the death loss at Franklin Livestock was less than what has been alleged in this lawsuit, and that Franklin Livestock overstated the death loss it experienced while using defendant's products and understated the death loss that it experienced while using products made by third-parties. *Id.* Finally, defendant asserts that the withheld documents revealed that Franklin Livestock had a recognized *Hisophilus somni* bacteria ("*H. somni*") outbreak that was not mentioned in the disavowed documents. *Id.* None of defendant's products are labeled or designed to protect cattle from *H. somni*, and defendant argues that this newly discovered information, consisting of emails and vaccination records, reveals the probable real cause of cattle deaths experienced by plaintiffs. *Id.*

Plaintiff Franklin Livestock responded by admitting that those disavowed documents should not have been produced because they were not original, contemporaneous records as previously represented. [DE 94]. However, Franklin Livestock stated that they were produced when Franklin Livestock was represented by old counsel and that its new counsel worked to fix the error. *Id.* Franklin Livestock argues that, because the parties are still in discovery and because a trial date has not been set, there has not been prejudice to defendant, and that Franklin Livestock should not be punished for complying with the rules by disclosing and correcting discovery errors. *Id.* Franklin Livestock also requested the Court's leniency due to certain hardships that have befallen its staff, and cites these incidents as a reason that the disavowed documents were mistakenly produced. *Id.* Finally, Franklin Livestock argues that this is an issue about the

credibility of documentary evidence which should be resolved at trial or on summary judgment and not on a sanctions motion. *Id.*

On February 21, 2017, plaintiffs J and K Cattle, Kevin Van Beek and Jay Leloux filed a stipulation of voluntary dismissal with the Court, indicating that, with consent from defendant, these plaintiffs would be dismissed with prejudice from this matter. [DE 102].

## DISCUSSION

In its motion, defendant asks the Court to exercise its authority under the Federal Rules of Procedure and its inherent powers to sanction Franklin Livestock for (1) fabricating thousands of documents, (2) representing the fabricated documents as having been contemporaneously created, (3) altering the data within the fabricated documents to favor Franklin Livestock's case, and (4) wrongfully withholding the actual contemporaneous documents which contradict the fabricated documents.

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Parties must respond truthfully, fully, and completely to discovery or explain truthfully, fully, and completely why they cannot respond." *Beach Mart, Inc. v. L & L Wings, Inc.,* 302 F.R.D. 396, 405 (E.D.N.C. 2014) (citation removed). Under Rule 37,

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order

payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37. Where a party fails to properly supplement or correct its responses to a Rule 34 request for production as required by Rule 26(e), that party faces the automatic sanctions of Rule 37(c)(1) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) or (e) violation is justified or harmless is entrusted to the broad discretion of the district court." *Reed v. Washington Area Metro. Transit Auth.,* No. 1:14-CV-65, 2014 WL 2967920, at *2 (E.D.Va. July 1, 2014).

In addition to the sanctions envisioned by the Federal Rules of Civil Procedure, a court also has the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* "[O]utright dismissal of a lawsuit … is a particularly severe sanction," even in the court's discretion. *Chambers,* 501 U.S. at 44–45, 111 S.Ct. 2123. Therefore, a court must be "[m]indful of the strong policy that cases be decided on the merits, and that dismissal without deciding the merits is the most extreme sanction" and may "only exercise its inherent power to dismiss with restraint[.]" *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 462–63 (4th Cir. 1993); *see also Pope v. Fed. Express Corp.,* 974 F.2d 982, 984 (8th Cir. 1992) (noting that where "a litigant's conduct abuses the judicial process … dis-

missal of [the] lawsuit [is] a remedy within the inherent power of the court.").

■ Whether proceeding under its inherent authority or under Rules 26 or 37 to consider whether to dismiss an action with prejudice, a court must consider the following factors:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Shaffer*, 11 F.3d at 463–64.

■ Under this guidance, the Court must first assess the degree of Franklin Livestock's culpability in determining whether sanctions are warranted to the extent requested by defendant. In assessing this factor, the Court is mindful of several significant admissions made by Franklin Livestock. · Franklin Livestock does not dispute that it had initially passed off the disavowed documents as contemporaneous records when, in fact, they were not. Franklin Livestock does not dispute that the disavowed documents should never have been produced, that the withheld documents should have been produced earlier, and that the disavowed documents contain information that is materially different from the original, contemporaneous records that it belatedly produced only now, years into this litigation. These facts do not appear to be in dispute; only the explanation or justification for what occurred during discovery is at issue.

This is not simply a case of failing to produce documents in a timely manner. That is only part of the problem that appears before the Court. Producing 15,000 pages of responsive documents after significant delay is a problem in itself, and not merely a technical error. But even more troublesome is the fact that Franklin Livestock sent defendant thousands of pages of records which were apparently altered in a systematic fashion and in a way that unmistakably benefited Franklin Livestock. These documents were held out to be original and contemporaneous records of its daily business, even though it knew or should have known they were not because of their material differences with the actual original records. Franklin Livestock does not deny that this happened, and has failed to provide any adequate explanation for why this conduct occurred.

Despite Franklin Livestock's protestations, the Court does not agree that it committed a mere "technical" or "procedural" error that was later corrected, and defendant is not asking for Franklin Livestock to be punished simply for complying with the requirements of Rule 26 to disclose and provide supplemental discovery. Franklin Livestock argues that the sudden appearance of 15,000 pages of relevant business records and the disavowal of thousands more is just a technical error that has now been corrected. But the creation of false records that are passed off as originals and which materially contradict the original records later produced cannot be glossed over as a "mistake." There appears to have been a serious abuse of the civil justice system by a litigant who has altered documents, withheld exculpatory evidence, and materially misled the defendant, the other plaintiffs, and this Court for several years about the fundamental basis of this lawsuit. Remarkably, at this point in the case, it appears that no one

can say with any certainty even how many animals have perished or at what time.

Franklin Livestock also tried to portray the disavowed vaccination records as "summaries" of the actual records, but fails to give a reasonable explanation for the significant discrepancies of material information between those two sets of documents. Nor can these documents reasonably be called summaries. Rather, someone created thousands of pages of false records, many of them handwritten and back-dated to infer contemporaneous preparation, and all of them made to appear to be original daily health logs and vaccination records.

Franklin Livestock also asked for leniency due to certain hardships that have befallen its staff, and cites these incidents as a reason that the new documents were incorrectly produced and fabricated. However, and while tragic, these incidents do not explain how over 6,000 pages of documents were altered and apparently created specifically for use in this litigation. Nothing other than intentional act could explain how the information on thousands and thousands of pages, including hundreds of *handwritten* documents, were altered or fabricated in a way that benefited Franklin Livestock's position in this case. Franklin Livestock claims it did not have the capacity to review and timely produce the critical documents in this case because of these staffing issues, but this does not explain how it found the time and capacity to generate over 1,500 pages of altered handwritten treatment and vaccination records and over 4,750 pages of altered electronic records. Someone altered the disavowed documents, and so the question must be asked: why instead was that person not tasked with simply gathering and producing the original records? Additionally, it appears that Franklin Livestock never sought additional time for responding to discovery requests. This, rather than producing thousands of pages of documents that it was later forced to disavow, would have been the proper method for managing any staffing issues it had. Finally, discovery was not served until more than one year after Ms. Wright's health condition was known to Franklin Livestock and ten months after Mr. Gupton's death, and so these issues seems to have little bearing on the instant discovery misconduct. Franklin Livestock's excuses are not persuasive to this Court.

Franklin Livestock has failed to adequately explain the discrepancies in its records or why such apparent violations of the discovery process have occurred. Franklin Livestock does not explain how the altered documents came about, why they were created in the first place, or who created them. Franklin Livestock does not address the examples provided by defendant that show how the alterations benefited Franklin Livestock's claims. The Court cannot ignore these discrepancies between the disavowed documents and the withheld documents and the implausibility of that being anything other than an intentional act when determining whether Franklin Livestock acted in bad faith and whether dismissal is warranted. For all these reasons, the Court is not convinced by Franklin Livestock's justifications and finds Franklin Livestock's actions involving these documents to have been highly culpable and done in bad faith.

■ The Court next finds that there has been significant prejudice to defendant as a result of Franklin Livestock's conduct. As defendant has shown, these disavowed documents were a central piece of evidence to plaintiffs' specific causation claim. These false documents have been at the heart of the discovery process, and as a result of their withdrawal, the parties must now reopen expert discovery and retain experts

to issue new reports and provide new analysis. The parties have consequently wasted tens of thousands of dollars and several years dealing with these disavowed documents. While the expenditure of legal and expert witness costs is alone not so prejudicial as to warrant dismissal, *see Pledger v. UHS–Pruitt Corp.*, No. 5:12-CV-484-F, 2014 WL 671727, at *3 (E.D.N.C. Feb. 20, 2014), these costs are a factor weighing against plaintiff and in favor of sanctions.

█ Next, the Court finds that the factors of prejudice to the judicial process and the public interest also weigh in favor of sanctions. "[O]ur adversary system depends on a most jealous safeguarding of truth and candor." *Shaffer*, 11 F.3d at 463. The conduct of Franklin Livestock in this case has abused the judicial process and undermined the entirety of these proceedings. The courts must defend the integrity of the judicial process and their role in society of seeking truth and resolving conflict. Such conduct as shown in this matter undermines these functions and cannot be tolerated, and dismissal is within this Court's authority when responding to such behavior. *See Jimenez v. Madison Area Technical College*, 321 F.3d 652, 657 (7th Cir. 2003) (upholding dismissal with prejudice under Fed. R. Civ. P. 11 where plaintiff fabricated critical documents because such conduct "amounted to a veritable attack on our system of justice"); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (noting that where "a litigant's conduct abuses the judicial process ..., dismissal of [the] lawsuit [is] a remedy within the inherent power of the court."); *Sarco Creek Ranch v. Greeson*, 167 F.Supp.3d 835, 853 (S.D. Tex. 2016) (dismissing with prejudice plaintiff's trademark infringement action under inherent power of the court as sanction for owner's perjury and fabrication of evidence and awarding attorneys' fees and costs); *Sto-*

*necreek–AAA, LLC v. Wells Fargo Bank N.A.*, No. 1:12-CV-23850, 2014 WL 12514900, at *3 (S.D. Fla. May 13, 2014) ("It would send a dangerous message to attorneys and parties if [the court] were to allow a party to use fabricated evidence as the basis of its complaint, strike the fabricated evidence and then allow the case to proceed. Such an abuse of the judicial process, and defilement of the judicial temple that is the court, will not be tolerated."). Preserving the integrity of the judicial process and deterring similar conduct in the future is clearly in the public interest, and this factor weighs strongly in favor of defendant.

█ The Court turns now the availability of other sanctions, aside from dismissal, that will appropriately remedy the harm caused by Franklin Livestock's discovery violations and sufficiently deter future parties from committing similar violations. In assessing this factor, the Court first notes that defendant cannot be faulted for failing to file a motion to compel production of these documents. Franklin Livestock represented that all original, contemporaneous, and responsive documents had been produced, and Franklin Livestock cannot now point to defendant's reasonable reliance on its misrepresentation as justification for lesser sanctions.

█ The Court, in assessing the magnitude of Franklin Livestock's actions and recognizing its discretion and inherent authority to safeguard the judicial process, finds dismissal of all of Franklin Livestock's claims to be the only appropriate sanction in this case. Nothing less is warranted by conduct which has fundamentally undermined these entire proceedings. The very basis of Franklin Livestock's legal claims is now in question. The disavowal of its previously produced vaccination records goes to the very heart of Franklin Livestock's case, and, at this point, Frank-

lin Livestock is unable to establish proof of the essential element of causation. Without being able to establish which cattle, owned by whom, died when or for what reason, the Court fails to see how this case continues.

After a close review of the record and disputed documents, and after considering Franklin Livestock's arguments, the Court is compelled to conclude that Franklin Livestock intentionally fabricated thousands of documents, represented those documents as originals, altered the data within the fabricated documents to favor its case, and wrongfully withheld the actual contemporaneous documents which contradict the fabricated documents. Due to these findings and as a result of the above analysis, the Court finds that dismissal of all of Franklin Livestock's claims is both warranted and necessary in order to sanction Franklin Livestock's conduct, deter future violations, and protect the integrity of the judicial process.

 Finally, defendant requested in its motion that the Court impose a monetary sanction on Franklin Livestock. Sanctions in the form of attorneys' fees are generally appropriate under the court's inherent power only "(1) where a party's litigation efforts directly benefit others, (2) where a party has willfully disobeyed a court order, and (3) where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reason." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995) (citations omitted); *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 543 (4th Cir. 2002) (declining to award fees and noting that, while a court may award attorneys' fees under its inherent powers, it may do so "only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so."). The Court finds that complete dismissal is a sufficient remedy for Franklin Livestock's miscon-

duct, and that any further sanction would be inappropriate. Therefore the Court, in its discretion, declines to award fees on top of the already substantial sanction of complete dismissal.

### CONCLUSION

Defendant's amended motion to dismiss [DE 90] is GRANTED IN PART AND DENIED IN PART. The claims of Franklin Livestock are dismissed, and the Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this 17 day of April 2017.